CHARLES CULVER v. STATE.

No. A-1774.    Opinion Filed June 8, 1914.

(141 Pac. 26.)

1.    RAPE—Sufficiency of Evidence. In a prosecution for statutory rape, the evidence examined, and held to be insufficient to support a verdict of guilty as found and returned by the jury.

2.    CRIMINAL LAW — Right to Speedy Trial — Dismissal. Bill of Rights, sec. 20, guarantees a speedy trial to every person charged with crime, and section 6096, Rev. Laws 1910, Procedure Criminal, requires that unless good cause to the contrary be shown, the court must order the prosecution to be dismissed, if a defendant whose trial has not been postponed upon his application is not brought to trial at the next term of court in which the indictment or information is triable after it is filed. Held, that a defendant against whom an indictment was returned at the October, 1910, term, who was arraigned and pleaded not guilty, and who demanded a trial at the March, 1911, term and again at the May, 1911, term when the case was continued on the mere statement of the county attorney "that he had not had time and opportunity to investigate the case as it should be," was denied his constitutional right to a speedy trial; and it was therefore error to deny the defendant's motion to dismiss the case.

(Syllabus by the Court.)

*Appeal from District Court, Craig County;*
*Preston S. Davis, Judge.*

Charles Culver was convicted of statutory rape, and appeals. Reversed.

*W. H. Kornegay,* for plaintiff in error.

DOYLE, J.   Plaintiff in error, herein referred to as the defendant, was convicted in the district court of Craig county upon an indictment returned and presented on the 15th day of October, 1910, wherein he was charged with having had sexual intercourse on the 10th day of May, 1910, with Alpha B. Culver, an unmarried female under the age of sixteen years. Upon arraignment he entered a plea of not guilty, and the case was set for trial on the 15th day of March, 1911. At that time, over the defendant's objection, the case was continued to the May term, and set for trial on May 15th. The defendant prepared for trial by causing subpoenas to issue for his witnesses. When the case was called for trial on May 15th, the county attorney stated that he had not had time and opportunity to investigate the case as it should be, and asked that it be continued. Thereupon the case was continued for the term over the defendant's objection and exception.' On the 11th day of November, 1911, the defendant filed a motion to dismiss the prosecution, "because the case has not been brought to trial for two terms of court after the finding of the indictment." The court overruled the motion to dismiss, allowed an exception, and ordered the trial to proceed, which resulted in a verdict of guilty, with punishment assessed at a term of ten years in the penitentiary.

The evidence shows that the defendant lived on his wife's allotment near Bluejacket; that in January, 1909, his mother-in-law died, leaving two unmarried daughters, who went to live with the defendant. Shortly afterward Stewart Mercer married the eldest of the two. He was the main witness for the state, and testified that he called at defendant's place in September, 1909, and went to the barn and there saw the defendant and Alpha Hudson standing facing each other, and she had her clothes up and he had his pants unbuttoned; that nothing was said about the matter at the time. That a few days after the marriage of Alpha Hudson and Earl Culver, he went with them to Bluejacket

and they made complaint before a justice of the peace, charging the defendant with the crime of rape. On cross-examination he stated that he was convicted and sentenced to serve one year in the military prison at Ft. Leavenworth for desertion; that while in prison he wrote letters to the prosecutrix and to the defendant, and to his wife, concerning the rape charge, and proposing to compromise with the defendant for the sum of $1,200. The letters were produced and identified by witness and offered in evidence as a part of his cross-examination. The county attorney objected, and the court sustained the objection, holding that the letters were not proper cross-examination.

Several witnesses, over the objection of the defendant, were permitted to testify that they had heard the prosecutrix say, when the defendant was not present, that she liked the defendant better than she liked her husband.

Earl Culver testified that the defendant compelled him to marry Alpha Hudson; that the defendant accused him of having intercourse with her, and said he would kill him if he did not marry her.

The testimony of the prosecutrix, as a witness for the state, following the preliminary questions, is as follows:

"Q. Were you ever married to the defendant, Charles Culver? A. No, sir. Q. How many children have you got? A. One. Q. How old is it? A. Eleven months old yesterday. Q. Are you the same Alpha B. Culver who married Earl Culver at Columbus, Kan.? A. Yes, sir. Q. In what county and state were you in when you had sexual intercourse with the father of your child? A. Craig county. Q. What state? A. Oklahoma."

On cross-examination she was asked who was the father of her child. The state objected as improper cross-examination. Objection sustained, and exception taken. The state rested, and the defendant moved to direct a verdict of acquittal, which was overruled and exception taken.

The prosecutrix, Alpha B. Culver, called as a witness on behalf of the defendant, testified that she was married to Earl Culver on the 16th day of May, 1910; that her baby was born on the 12th day of December, 1910; that her husband, Earl Culver, was the father of her child; that he had sexual intercourse

with her at least three times before they were married; that her husband and Stewart Mercer compelled her to make complaint against the defendant; that they said they could compel defendant to pay them $1,200 to compromise the case; that a day or two later she left her husband and returned to make her home with her sister, the defendant's wife; that her sister, Mrs. Culver, caught Earl Culver having intercourse with her in the kitchen one night in April, 1910, and he ran away; that the defendant and his wife then insisted that she and Earl should marry. She denied ever having any improper relations with the defendant, or that Stewart Mercer was ever in the defendant's barn while she was there with the defendant.

Mamie Culver testified that she was defendant's wife, and they had three children; that on her mother's request she took her two sisters to live with her after her mother's death; that the eldest married Stewart Mercer, and the other Earl Culver; that in April, 1910, she discovered Earl Culver and her sister having sexual intercourse; that she told her husband, and he said he thought they had better get married; that she insisted on their getting married; and that she had no reason to believe that any improper relations existed between her husband and her sister Alpha.

Charles Culver, as a witness in his own behalf, denied all acts of improper conduct with the prosecutrix. The letter which state's witness Mercer admitted that he wrote to defendant was permitted to be introduced in connection with the defendant's testimony. The letter, dated July 13, 1910, contains the following statement:

"I will say for you that I don't want to see any innocent man suffer, as I have a taste of that myself, and you remember I told you if you were innocent I wanted to see you prove it, and it begins to look as if you were innocent of the awful crime, but you can't blame me for believing it when they both told me so, and asked me to take them to town, and all I ever said was just what they told me, and I told every one that I talked to that I was surprised of you doing such an act as that. If the girl says that you are an innocent man, then she can not expect any

money from you, but I thought if you were guilty and wanted to buy off, that twelve hundred dollars would be a small sum to give her."

Also there was introduced a letter written to the prosecutrix by witness Mercer, advising her not to compromise unless the defendant would come up to Ft. Leavenworth and give Mercer $1,200, and stating that he would hold the money for her, and when he got out of prison he would build a nice home for her and buy her a nice piano. Three or four other letters of like tenor, written by Mercer to his wife and the prosecutrix, discussing the manner and method of securing the $1,200 from the defendant, which were offered as a part of Mercer's cross-examination, and to which the court then sustained objections as not proper cross-examination, were admitted as part of the defense.

The Attorney General very properly declines to support the conviction in this case, by brief or argument.

After carefully considering the proceedings, we are constrained to conclude that the trial in this case was conducted irregularly and without due regard to the rights of the defendant. It appears that nearly every objection to evidence made by counsel for the defendant was overruled, and nearly every objection of the prosecuting attorney to evidence offered on behalf of the defendant was sustained, and many of the rulings of the court upon the evidence are erroneous.

It is also our opinion that the evidence is entirely insufficient to establish the felonious act. The only witness who testified to the act was impeached by his own written statements, and the proof tended to show that he had conspired with one Charles Howell and the husband of the prosecutrix to extort money from the defendant. The prosecutrix denied that the defendant had ever been guilty of any impropr relations with her, and her testimony is corroborated by that of the defendant's wife, and by the defendant as a witness in his own behalf.

There is another view of the case which renders it unnecessary to notice the numerous errors assigned and relied upon to secure a reversal of the judgment and the awarding of a new trial.

This view is based upon the defendant's contention that he was denied his constitutional right to a speedy trial, and that the court erred in overruling his motion to dismiss the case on the ground that he had not been brought to trial within the time prescribed by law. The record discloses that a complaint was filed against the defendant in July, 1910, and on a preliminary examination he was held to answer. It does not appear whether or not an information was filed. The indictment was returned at the October, 1910, term. A plea of not guilty was entered. The defendant demanded a trial at the March, 1911, term. At the May, 1911, term, the defendant again demanded a trial, and over his objection the case was again continued for the term on the application of the county attorney. No showing was made on the part of the state, and the only ground for continuance was the mere statement of the county attorney that he had not had time and opportunity to investigate the case as it should be. The Constitution guarantees a speedy and public trial to the accused, in all criminal prosecutions. Section 20, Bill of Rights. The Legislature has provided what shall constitute a reasonable time within which a defendant shall be brought to trial, unless good cause is shown for further delay.

Section 6096, Rev. Laws 1910, Procedure Criminal, provides:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

We are inclined to think that the action of the court in continuing the case over the May term without requiring the state to show cause operated as a discontinuance. Where any valid reason exists, or legal ground is shown by the state for the continuance, the granting of the same is a matter within the sound discretion of the court, but under section 6096, *supra,* a defendant indicted for, or charged by information with, a public offense, whose trial has not been postponed upon his application, is entitled to his discharge for failure to try his case within the statu-

tory time, in the absence of any good reason for further delay. The statute is for the purpose of carrying into effect the constitutional guaranty of a speedy trial. The authorities uniformly hold that such statutes are enacted for the purpose of enforcing the constitutional right, and that they constitute a legislative construction or definition of the constitutional provisions. *State ex rel. Eubanks v. Cole*, 4 Okla. Cr. 25, 109 Pac. 736. See, also, *McLeod v. Graham*, 6 Okla. Cr. 197, 118 Pac. 160.

Upon the failure of the state to make a proper showing for a continuance at the May term, and the defendant not consenting thereto, the case should have been dismissed. It was therefore error to deny the defendant's motion to dismiss. It follows that the judgment should be reversed, with direction to discharge the defendant.

ARMSTRONG, P. J., and FURMAN, J., concur.