In the Matter of the Habeas Corpus of
Billie Lue GREGORY, Petitioner.
No. A–12445.

Criminal Court of Appeals of Oklahoma.
April 5, 1957.

Ernest R. Brown, Pryor, Truman B. Rucker, Jack M. Thomas, Tulsa, for petitioner.

W. M. Thomas, Jr., County Atty., Mayes County, Pryor, for respondent.

BRETT, Presiding Justice.

This is an original verified petition for writ of habeas corpus, brought herein on March 1, 1957, by Billie Lue Gregory. Objection being made by the state that mandamus and not habeas corpus was the proper procedure, it was announced from the bench that the petition would be treated as sufficient for both purposes and determination of the matter would be entered in light of the record as made.

In his petition, Gregory alleges that he is being unlawfully detained by Sheriff L. L. Weaver of Mayes County, Oklahoma. The causes of said unlawful restraint, he charges, are certain informations pending in the District Court of Mayes County wherein he is alleged to have committed the crimes of robbery by force and fear, conjoint robbery, burglary in the second degree, and breaking jail. Petitioner further alleges that his detention is unlawful on all of said charges for the reason that on November 9, 1955, he was taken into custody and has ever since that time up to the

filing of this petition been denied his constitutional rights to a speedy trial, Okla. Const. art. 2, §§ 6, 20, as well as his definitive rights under the provisions of 22 O.S.1951 § 812. He specifically alleges that the July term of 1955 has ended as have the January and July terms of said Court for 1956, as well as two months of the January term for the year 1957. He alleges numerous attempts were made by the state to trade out with him on pleas of guilty, all of which he rejected and demanded trial. He further alleges, in substance, that on the 19th day of February, 1957, he filed motions for dismissal and habeas corpus for failure to give him a speedy trial. The matter was called up for hearing on February 21, 1957, and he met what amounted to summary denial thereof. Later, on the 28th of February, 1957, petitioner, through new counsel, attempted to present motions to dismiss the said actions as provided in 22 O.S.1951 § 812, whereupon the trial judge ordered said motions to be stricken and expunged from the record, indicating, however, the matter would be set at a later date. It does appear that the trial court refused to take any definite action designed to provide speedy trial, hence, resort to this Court.

To this petition the state makes response, denying generally all the material allegations thereof, and alleging the reason the defendant had been denied a speedy trial was because there had been no criminal term of court in Mayes County since the petitioner's imprisonment. Such is the substance of the response.

On the trial of the issues thus joined, the evidence supports the allegations of the petition. In fact, it was admitted that the petitioner had been given no trial for approximately sixteen months although he was imprisoned substantially all of said time. The record further shows said delay was not on the petitioner's application. Evidence, by way of good cause, was offered by the state that the prisoner had made no demand for a trial, stated he wanted none, and that the District Court of Mayes County was without funds with which to summon a jury and pay the expenses thereof. No other evidence by way of attempt to show good cause was offered.

■ The first question presented, herein, relates to the manner of procedure, whether by habeas corpus or mandamus. The procedure which may be invoked for relief in this case is cumulative. Relief may be either by habeas corpus or mandamus if the petitioner is in custody, or by mandamus if on bail, or by appeal where the question has been properly preserved. Eubanks v. Cole, 4 Okl.Cr. 25, 109 P. 736; Glover v. State, 76 Okl.Cr. 53, 134 P.2d 144, and other cases too numerous to mention. The power of grants in aid of appellate jurisdiction for such relief as prayed for has long been established by numerous cases.

■ On the issue of the defendant's right to dismissal of the charges for failure to accord him a speedy prosecution, this Court has expressed itself in numerous cases. In Hembree v. Howell, 90 Okl.Cr. 371, 214 P.2d 458, 460, we quoted from Brummitt v. Higgins, 80 Okl.Cr. 183, 157 P.2d 922, as follows:

"The Bill of Rights of the Oklahoma Constitution provides: 'Right and justice shall be administered without sale, denial, delay, or prejudice,' Art. 2, Sec. 6; and further, 'in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed.' Art. 2, Sec. 20.

"Title 22 O.S.1941 § 812, provides: 'If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed unless good cause to the contrary be shown.'

"In the case of Ex parte Meadows, 71 Okl.Cr. 353, 112 P.2d 419, 427, it is stated:

" 'The term "speedy," as employed in the constitutional provisions under consideration, being a word of indeterminate meaning, permits legislative definition to some extent; and the authorities generally hold that statutes providing for a discharge of accused unless trial is had within a stated time after indictment, information, or commitment, or which require an indictment or information within a stated time, are enacted for the purpose of enforcing the constitutional right, and that they constitute a legislative construction or definition of the constitutional provision, and must be construed fairly to the accomplishment of that end. 22 C.J.S., Criminal Law, § 467, p. 716.

" 'See, also, Ex parte Leathers, 66 Okl.Cr. 172, 90 P.2d 450; Ex parte Menner, 35 Okl.Cr. 252, 250 P. 541, Ex parte Munger, 29 Okl.Cr. 407, 234 P. 219.'

"And, also: 'As there is no hard and fast rule for determining the question as to what is meant by the term "unless good cause to the contrary be shown," * * * it becomes a matter for judicial determination under the facts and circumstances in each particular case.'

"In Harrell v. State, 41 Okl.Cr. 305, 272 P. 1038, it is stated: 'Accused, applying for dismissal for unnecessary delay, need only show expiration of statutory time and lack of postponement on his application; on accused's application to dismiss for delay, prosecution must show cause for continuing him over statutory time.' Comp.St.1921 § 2913 (22 O.S.1941 § 812).

"To the same effect, see Parker v. State, 7 Okl.Cr. 238, 122 P. 1116, 124 P. 80; Clinkenbeard v. State, 40 Okl. Cr. 113, 267 P. 485; Culver v. State, 11 Okl.Cr. 4, 141 P. 26; Smith v. State, 27 Okl.Cr. 294, 227 P. 901.

"It has been held that where the defendant is on bail the presumption is that the delay was caused by or with the consent of the defendant and the record must affirmatively show that he demanded a trial or resisted the continuance of the case. However, if the defendant is not on bail, the law makes the demand for him and the prosecution has the burden of showing that the trial was delayed for some lawful cause. State ex rel. Davis v. Bayless, 38 Okl. Cr. 129, 259 P. 606; Francis v. State, 26 Okl.Cr. 82, 221 P. 785; Bowes v. State, 7 Okl.Cr. 316, 126 P. 580."

■ As herein before said, approximately sixteen months elapsed from the time petitioner was imprisoned until this action was filed herein, and in all of said time no attempt, whatsoever, had been made by the trial court to grant this petitioner his right to a speedy trial. The only attempt to show good cause for the failure to do so is found in the empty excuses that the defendant did not wish a trial and that he made no demand for a trial. It occurs to us that these contentions are refuted by the very fact of the petitioner's repeated refusals to plead guilty. Moreover, as repeatedly said by this Court, one imprisoned need not make demand for speedy trial, the law makes the demand for him. Cases supra.

■ The only other cause advanced for failure to accord the petitioner his right to a speedy trial is that the county was without sufficient funds to set a criminal docket. It was admitted by the state that the trial court did have money to set a civil docket for the trial of cases involving property rights. We can hardly believe that the people of Oklahoma would knowingly sanction standards which would place greater value on property rights than on the human right to trial for one's liberty. But, such priority is within the trial court's conscience and discretion. We know of no rule, except that of the demands of justice and the consequent forfeiture of the state's right to prosecute, where the imperative

provisions of 22 O.S.1951 § 812 are invoked against excessive delay. The lack of jury funds is no excuse for such delay in the administration of justice. It has been held in other jurisdictions that the accused is entitled to a dismissal of the cause in cases of excessive delay in providing speedy trial and that the court's failure to provide a jury does not constitute good cause for failing to bring the cause to trial. State v. Carrillo, 41 Ariz. 170, 16 P.2d 965; State v. Brodie, 7 Wash. 442, 35 P. 137. In Newlin v. People, 221 Ill. 166, 77 N.E. 529, 530 construing a statute somewhat similar to ours, it is said:

"By the section of the statute in question an absolute right is conferred upon a person charged with crime and committed to and imprisoned in jail, to be set at liberty unless tried within the time limited by that section, except where the circumstances exist which by the provisions of that statute require the court to hold the person for trial. Thus is the constitutional guaranty of a speedy trial made effective. To an application under this statute it is not sufficient for the prosecution to say that it was inconvenient or impossible for the judges of the circuit to hold the term of court at the time fixed by the statute."

In State v. Coover, 165 Kan. 179, 193 P.2d 209, 212, the Supreme Court of Kansas said:

"The failure to provide for the attendance of a jury to try causes must beyond question, be regarded as one of the very things the constitutional guaranty of a speedy trial was designed to meet."

In State v. Dewey, 73 Kan. 735, 88 P. 881, 882, it was said:

"If an exception can be written into the statute so that a delay caused by the neglect of official duty is to be considered as a good excuse for failure to bring the accused to trial, the constitutional right can be frittered away indefinitely."

As herein for sixteen months, or in other cases possibly longer. In the case of State v. Sims, 1 Tenn. 253, the state had omitted to provide an Attorney General since the resignation of the former one. The delay in the trial was incident to such failure and the accused sought his discharge from custody. It was held therein:

"The omission of the state to provide a public prosecutor can not render the provision of the Constitution inefficient. This circumstance of itself furnishes no ground to keep the prisoner six months longer in confinement."

As was said in Newlin v. People, supra:

"If the provisions of the law do not insure the transaction of the business of the courts a remedy may be afforded by the Legislature. We are without power to read into the statute an exception which does not appear there."

If the law is inadequate to provide jury funds, the legislature should give immediate attention to legislation designed to provide the necessary adequacy. If it is a matter of local dereliction, that too should be corrected. In any event, the imperative provisions of the constitution and statute cannot be obviated for the foregoing reasons. To hold otherwise would render the constitutional right to speedy trial by a jury a meaningless symbol. We are of the opinion the plea, herein, the county was without funds does not constitute good cause as within contemplation of the Constitution and the foregoing statute.

The fact that this accused may have been charged with the commission of several heinous crimes by no means diminishes the gravity of denial of his right to a speedy trial, in view of the fact that regardless of the charges pending against him, he too is presumed to be innocent until proven guilty. While right to speedy trial by jury is essentially a benefit for the innocent, no governmental power may prejudge the accused and deny the right. It must, as it has always been under constitutional government, be open to all alike,

the guilty as well as the innocent. The right to speedy trial being one of the imperative obligations of government in this country, it is one that must be met. It cannot be lightly regarded or entirely evaded because of inconvenience or lack of funds. It is the intention of this Court to maintain the rights of every citizen, regardless of the fact that sometimes it seems the law moves with leaden feet.

It has been rightfully said, the price of liberty is eternal vigilance. On many occasions since this case was publicized at the time of the hearing, we have been asked, "How could such delay prevail in this country in the face of the constitutional provisions for speedy trial?" The answer is, the remonstrative voice of an accused often times cannot be heard from behind prison walls. The people, being uninformed of his plight, have no cause to be disturbed. Hence, the accused, as a prisoner, must depend upon the judiciary and especially the local judge under whose jurisdiction he first feels the force of law. If the judge, under whose jurisdiction he falls, lacks interest, is lethargic towards his responsibilities, or is derelict to duty, "Lo freedom weeps, wrong rules the land, and waiting justice sleeps." There is no higher duty of the judiciary than to rise in preservation of the rights of those who unfortunately become enmeshed with the law, and whose rights are either being ignored or trampled underfoot. The Judge, under his oath, is bound to uphold the Constitution of the United States and the State of Oklahoma, as well as the statutory rights of the people, the guilty as well as the innocent, the ignorant as well as the educated, the poor as well as the rich. Judges have no other choice under the law. They should seek no other course. The trial judge controls the setting of cases on the docket. In fact, in so doing he is the primary bulwark between the accused and despotic delays. It should not require sixteen months for judicial intervention on the local level into such a situation as herein involved. For, the judge on that level is the watchman to whom those silent sentinels of constitutional safeguards repetitiously cry out, "Watchman, what of the night?" Our founding fathers, steeped in historical example of abuse of power, were unwilling to rest the safeguards of the Bill of Rights alone to the uncertainties of judicial fervor which sometimes falters or may fail in the protection of sacred rights. Instead, they insisted that these rights be spelled out in black and white in the Bill of Rights, United States Constitution Sixth Amendment, and in Article 2, Sections 6 and 20, Oklahoma Constitution, which do not require a lawyer to interpret. Then, to make doubly sure, Oklahoma's founders by legislative action spelled out definitive limitations in 22 O.S.A. § 812 to the right to a speedy trial, apparently to relieve it of elasticity and prevent relaxation of its true meaning through judicial interpretation. All this they did in order that the right to speedy trial might not be frittered away and the citizen made a pawn of dictatorial government and a slave of despotic police action. Through sacrifice and bloodshed, the precious Bill of Rights was won. Jealously, these rights have been guarded through the years. To their perpetuation both judges and the laity should assert themselves with increased devotion for therein lies the security of free men in America; men who are masters of the State and not slaves of despotic power.

We are tempted to say more, but the record speaks most abundantly of the official derelictions in the case at bar, and anything further would be an anticlimax. It is sufficient that we observe a situation of unwarranted delay. Even after petition had been made to this Court, an opportunity was afforded the lower court to grant the statutory imperative right that accrued by the denial of the Constitutional right. We regret that instead of granting speedy relief, a series of dilatory maneuvers and unwarranted delays was encountered. It is to grant relief in such cases that this court was established.

For all of the above and foregoing reasons, the writ of habeas corpus was granted

and the petitioner released from state custody. The District Court of Mayes County is hereby ordered to dismiss the charges pending against the accused.

POWELL and NIX, JJ., concur.