**STATE of Oklahoma, Plaintiff In Error,**

v.

**E. L. DICKSON, Defendant in Error.**

No. A–12624.

Criminal Court of Appeals of Oklahoma.

Dec. 10, 1958.

Ralph K. Jenner, County Atty., Choctaw County, Hugo, for plaintiff in error.

James Bounds, Hugo, for defendant in error.

POWELL, Judge.

This is an appeal by the State from an order of the district court of Choctaw County having the effect of setting aside the information filed against E. L. Dickson, charged with the crime of fraudulent branding of a certain heifer, alleged to be the property of James Manar.

◼ The information had been filed in the district court of Choctaw County, and the defendant filed a motion to set aside the information and dismiss, based on the ground that the crime was charged as having been committed on May 15, 1956, but that the information had not been filed in the district court until January 23, 1958, and that in the meantime "two terms of criminal jury court were held at which he could have been informed against." It was asserted that accused had been deprived of his constitutional right to a speedy trial. Okl.Const. Art. II, § 20.

◼ It was further urged that the prosecution must be dismissed under the provisions of 22 O.S.1951 § 811, providing that "when a person has been held to answer for a public offense, if an indictment or information is not filed against him at the next term of court at which he is held to answer, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

On February 6, 1958 the district court overruled the said motion of the defendant, whereupon he entered his plea of not guilty to the charge of fraudulent misbranding.

Following this at page 8 of the record appears the following order:

"On the — day of February, 1958, the court made and entered its order setting aside its order of February 6, 1958, overruling defendant's motion to dismiss the cause and setting aside the defendant's plea to the information herein, for the purpose of further hearing counsel for the defendant and counsel for the State on the defendant's motion to dismiss the cause, whereupon the county attorney's motion to dismiss the defendant's motion to set aside the information and dismiss the cause, proceedings were had and testimony adduced as follows:".

This had the effect of placing the parties in the same position as if the defendant was then being arraigned for the first time and placed the burden on the State to show

good cause for the delay, if there was delay.

█ From the records introduced at hearing it appears that the preliminary complaint was filed in the justice of the peace court of Bert Bush, Hugo Township, on February 26, 1957 and that a warrant was duly issued and served and the defendant E. L. Dickson on February 28, 1957 made bond to appear on March 16, 1957, and that on that day the case was continued to April 1, 1957 on affidavit of defendant that he could not go to trial by reason of lack of material evidence that he needed time to produce. On April 1, 1957, defendant through his attorney O. A. Brewer, filed an affidavit for change of venue and the case was thereupon transferred to the justice court of Ed Payne, of Hugo township, and on the same day, April 1, 1957, Ed Payne certified his disqualification and the cause was transferred to the justice court of E. J. Norwood, of Oaks township, Soper, on April 2, 1957, and E. J. Norwood thereupon certified his disqualification and the case was transferred to the justice court of W. R. Pebworth, justice of the peace of Boswell, and on April 4, 1957 W. R. Pebworth certified his disqualification, and the case was thereupon transferred to Eugene D. Ellis, county judge of Choctaw County, as examining magistrate, the case being endorsed and filed in said court on April 15, 1957, where preliminary hearing was set for April 17, 1957, but continued from time to time to June 4, 1957. Upon hearing, the county judge sitting as an examining magistrate, held that the defendant should be bound over to the district court, and the case was certified to the district court on June 8, 1957.

The court clerk of Choctaw County docketed the case, "No. 3267, State of Oklahoma vs. E. L. Dickson", but incorrectly showed the case as an appeal, and this error on the part of the court clerk was not immediately discovered.

The record indicates that no criminal docket of the district court of Choctaw County was actually set between June 8, 1957, the date the case was certified to the district court, and January 23, 1958 when an information was actually filed, following the discovery of the erroneous docketing. It seems that the district Judge had set a criminal docket for February 17, 1948, the first since the case had been certified to that court, and an arraignment docket was set for January 3, 1958. The defendant on January 23, 1958 asked for and was granted twenty-four hours in which to plead, and on January 24, 1958 filed his motion to set aside the information and dismiss, already mentioned, and which was overruled, whereupon defendant entered his plea of not guilty to the information. The subsequent action of the court in setting aside his order overruling the motion to dismiss and actually setting aside the information on the grounds complained of in the motion, already set out, form the basis for the appeal by the State.

Irrespective of the grounds advanced in defendant's motion, it has been immediately noticed that a preliminary hearing was had before the county judge, acting as an examining magistrate, on June 4, 1957 and that the transcript was filed in the office of the clerk of the district court on June 8, 1957, and by statute (20 O.S.1951 § 95) it is noticed that there are two terms of district court each year; that the July, 1957 term of court commenced on the first Monday in July, 1957 and the term that followed commenced the first Monday in January, 1958. So the July, 1957 term of court intervened and expired prior to the filing of the information, which was on January 23, 1958.

The district court had for consideration whether the fact of the court clerk's mistake in erroneously listing the case as an appeal from the county court excused the county attorney from independently of the court clerk keeping up with his cases, and apparently decided that the excuse offered was not sufficient. We must affirm the action of the trial court.

The error of the court clerk cannot excuse the county attorney whose duty it is to keep a list of all pending cases and or-

dinarily within a few days to a few weeks after a transcript is filed by an examining magistrate in the district court, to file an information. We are governed by 22 O.S. 1951 § 811, already quoted, and by reason of the failure of the county attorney to file the information in question not later than the term following the filing of the transcript, must find that the information was subject to dismissal. The statute is clear and unambiguous. It is noted from the number of examining magistrates disqualifying that this case has required perseverance and a high quality of courage and effort on the part of the county attorney. Nevertheless, we are bound by the statutory provisions quoted.

See, illustrating the principle involved: Ex parte Menner, 35 Okl.Cr. 252, 250 P. 541 (a Choctaw County case); Day v. State, 50 Okl.Cr. 180, 296 P. 987; Parkinson v. State, 64 Okl.Cr. 169, 78 P.2d 321.

We note that the crime charged in the information is alleged to have taken place on May 15, 1956. Jeopardy has never taken place, so that ordinarily the action would not be barred until three years following May 15, 1956. 22 O.S.1951 §§ 151, 152.

■ The attention of the county attorney is called to the hereinafter cited statutory provision and the uniform holding of this court since it came into being. 22 O.S.1951 § 817, reads:

"An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense."

This means in this case that while the procedure of the district court in dismissing the action under the circumstances enumerated is approved, that the county attorney may file a new complaint with the county judge, acting as an examining magistrate, or with any other examining magistrate, and start all over, being careful, if defendant is bound over, to promptly file an information in the district court and see that trial is afforded without undue delay. See in this connection: Ex parte Warford,

3 Okl.Cr. 381, 106 P. 559, opinion by Owen, J., and concurred in by Judges Furman and Doyle; and, particularly see: Ex parte Warrenburg, 63 Okl.Cr. 125, 73 P.2d 476, where Judge Barefoot in an exhaustive opinion treats the history of the section of the statute involved. The cases may be referred to for the reasoning supporting the rules. The use of the citator will reveal many other cases in this and other jurisdictions following the principle stated. Of interest, see Hembree v. Howell, 90 Okl.Cr. 371, 214 P.2d 458; and see note at pages 943–964 of 50 A.L.R.2d.

BRETT, P. J., concurs.

NIX, Judge (concurring in the result).

There is grave doubt in the opinion of your writer as to whether an appeal lies from an order of a trial judge in dismissing a prosecution under a provision of the statute. Where the court follows a statutory provision it is doubtful if said action of the court is open to an objection on a procedural question. Our statute provides that the state may appeal in a criminal case upon certain limited grounds and no other; set forth in Tit. 22 O.S.1951 § 1053:

"1. Upon judgment for the defendant on quashing or setting aside an indictment or information.

"2. Upon an order of the court arresting the judgment.

"3. Upon a question reserved by the State."

The state herein appeals from an order sustaining defendant's motion to set aside and dismiss because the defendant had been denied a speedy trial. The court dismissed said cause and the state appeals asking for a reversal of said order. The Supreme Court of California in the case of People v. More, 71 Cal. 546, 12 P. 631, had this to say with respect to section 1385:

"The power under which the order was made is substantially the same as that held by the attorney general in England, and by the prosecuting officer in many of the American states,

to enter a nolle prosequi. The court, for the purposes of the order of dismissal, takes charge of the prosecution, and acts for the people. It holds the power to dismiss, as the attorney general in England holds the power to enter a nolle prosequi, by virtue of the office and the law; and it is exercised upon official responsibility. The court, having acted for the people, and under express power granted by them to so act in their criminal prosecutions, there is no appeal on their part from such action."

The California code in setting forth the grounds upon which an appeal may be had by the state differs from our own in that it does not provide an appeal upon a reserved question of law, but the similar section does provide an appeal from an order "made after judgment, affecting the substantial rights of the people." I can see little difference in the interpretation of these utterances.

Numerous cases support the law laid down in the More case, supra, see People v. Hollis, 65 Cal. 78, 2 P. 893; People v. Romero, 13 Cal.App.2d 667, 670, 57 P.2d 557; People v. Morris, 115 Cal.App.2d 585, 252 P.2d 681; People v. Baxter, 119 Cal. App.2d 46, 258 P.2d 1093; State v. Wear, 145 Mo. 162, 46 S.W. 1099; State v. Ashcraft, 95 Mo. 348, 8 S.W. 216; State v. Bollinger, 69 Mo. 577; State v. Marshall, 124 Mo. 483, 27 S.W. 1107. The Wear case, supra, states:

"The state is not entitled to appeal from a judgment discharging a defendant under [statute] because not brought to trial, without his fault, before the end of the third term of court in which the cause is pending after indictment."

A review of the record in the instant case does not reveal where a question of law was reserved but appears to be a direct appeal asking for a reversal of the trial court's action. However, the matter has been considered and opinion written which I assume was done upon the theory that the appeal was based upon an order setting aside an information rather than an order dismissing the prosecution.

The question paramount in the mind of the writer is the finality of the dismissal.

The majority opinion relative to the finality of the dismissal, is heavily supported by previous decisions of this court, all of which, in my opinion, abridge, thwart, distort, and abuse Art. 2, § 20 of the Constitution of the State which unequivocally guarantees an accused a public and speedy trial. That the trial court was correct in dismissing the case at bar, I heartily agree; but with that portion of the majority opinion approving a refiling of the same charge, I firmly disagree.

One need look no further for an example of the frivolity of such ruling than the case at bar, for what relief will be afforded the accused whose case has been dismissed for lack of a speedy trial, guaranteed him under the Bill of Rights. When the mandate is spread the county attorney need only file another information, issue another warrant, take defendant into custody and keep said charge pending until the statute of limitations has run. Should it be such a case as Murder, where the statute never runs, the charge could be kept pending for a lifetime, as long as it was dismissed the first of every year, defendant re-arrested at the jail door with a new warrant upon the same offense and returned to his cell. If a second information can be filed, so can a third and a fourth, and so on, and thus the defendant be held without trial for an indefinite period in direct violation of the spirit of the Constitution, and our statute requiring criminal cases to be brought to trial within a specified period of time. It would leave the interpretation of the Constitution in the exclusive realm of the prosecutor to define in accord with his personal whim, caprice or fancy, and to vex, harass, or abuse an accused without recourse. The right to a speedy trial is as ancient as the law itself. It was founded upon the provision that all persons charged with the commission of a crime are entitled to have

their name cleared or their guilt adjudicated as hurriedly as possible. When the charge is filed the punishment of the accused begins. His reputation is immediately degraded, his name becomes a derogatory by-word, his business suffers and his family is tormented. His innocence should be quickly proclaimed or his guilt ascertained and his time begun. Unnecessary delay can generate irreparable damage to his defense. Witnesses could scatter, die or forget, and in non-bailable cases, the avenue would be open for barbaric and indefinite prison confinement while awaiting a trial, the anticipation of which may be in vain.

The statute in question before us reads as follows:

"When a person has been held to answer for a public offense, if an indictment or information is not filed against him at the next term of court at which he is held to answer, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." Tit. 22 O.S.1951 § 811.

In the opinion of your writer this statute is imperative and it means this, or nothing, and the dismissal, if defendant be entitled to it, must be absolute and without delay, because if he were liable to be again arrested and informed against for the same offense, the discharge would be pure mockery and the means of aggravating the evil which the statute sought to cure. To so hold would forever identify the foundation upon which the statute was built as sand.

Your writer chooses to believe that this section of our statute plainly exhibits the legislative desire and solicitude that the provisions of our constitution guaranteeing a speedy trial should not fail in being enforced for the want of legislative aid.

The Constitution of the United States in the VI Amendment provides that the accused shall enjoy the right to a speedy and a public trial. Art. 2, § 20 of the Constitution of Oklahoma provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

Because of the uncertainty of the interpretation of a speedy trial as provided by the Constitution, the legislature rightfully implemented its meaning by defining a speedy trial by the enactment of 22 O.S. 1951 § 811, heretofore recited and Sec. 812 which requires a defendant to be brought to trial by the next term of court after the term in which he was informed against, or his prosecution dismissed unless good cause be shown. Following these two sections, section 814 provides:

"If the court direct the action to be dismissed, the defendant must, if in custody, be discharged therefrom, or if admitted to bail, his bail is exonerated, or money deposited instead of bail must be refunded."

We can readily observe the necessity for these statutes, the answer is plain. If we are left to the language of the Constitution without further guidance from the legislature, then the questions as to what does or does not constitute, within the meaning of the Constitutional provision, a speedy public trial, must in every instance rest in the discretion of the particular judge to whom the question may be addressed. Under the common law regime, even at very ancient common law, a prisoner's right to a speedy trial was secured to him by a body known as the Commission of Jail Delivery, whereby the jails were cleared and the prisoners therein confined, either convicted or punished, or delivered from custody twice every year. 2 Hawk.P.C. ch. 6. It was the abolition of the Commission of Jail Delivery which has made necessary our later statutes defining the limit of the delay allowed the state in bringing malfactors to trial. There are well established exceptions to this fundamental right. It is well established that in order to benefit from our statutes securing a speedy trial, the accused must demand trial; if he does not make such demand he waives his right. However, if he is confined in jail the law makes demand for him, thus obliterating the pos-

sibility of the 'forgotten prisoner.' If the accused is at liberty on bail then in that event, he must make a demand for a speedy trial or his rights are waived. In conformity with this rule, the defendant must be afforded a speedy and public trial unless good cause may be shown. It requires our public officers to be diligent in performing their duties with expediency and without unnecessary delay. More adequate language can be found to relate the history, necessity and principles behind this theory than was used by Judge Temple of the Supreme Court of California in the case, Re Begcrow, 133 Cal. 349, 65 P. 828, 56 L.R.A. 513, 516, wherein he dissertates upon the question of accused's rights to a speedy trial. He said:

"It is well to remember that this case involves fundamental rights, and is of universal interest. Around [those rights] the English have waged their great battle for liberty. Without the narration of the conflicts to which they have given rise, the history of the English people would be a dull affair. The right of the government with reference to persons accused of crime has been, and is yet, a matter of great consideration. It led to the agitation which wrung from power the great charter, the petition of right, and the habeas corpus act. All the great achievements in favor of individual liberty, of which the English people are so justly proud, may be said to have come through contest over the rights of persons imprisoned for supposed crime. And justly it is deemed a matter of the utmost importance. The government cannot take property from the meanest inhabitant without just compensation paid or tendered in advance, but it takes his liberty, which it has been justly said is to some extent to take his life, upon a mere charge of crime. This is necessary, that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And this is

precisely what the state has covenanted with each inhabitant that it will not do. In this one provision of the constitution the state speaks as did the English sovereign in the great charter in 1215. It is an assurance from the sovereign, *Nec super eum ibimus, nec super eum mittimus, nisi per legale judicium parium suorum, vel per legem terrae*. Hallam says, referring to this, 'From the era, therefore, of King John's charter, it must have been a clear principle of our constitution that no man can be detained in prison without trial.' [2 Hallam. Hist.Mid.Ages 342.] The state, then, in a criminal case is not only a party litigant, and as such bound to use diligence to prepare for trial, on pain of having its case dismissed, but it holds the defendant in custody upon this express guaranty for a speedy trial, and that it will not continue to hold him save under a legal verdict declaring him guilty * * *."

These principles in the opinion of your writer cannot be ignored by any jurist and the right to a speedy trial is accepted by all courts of the land. The conflicts and confusion has resulted from the interpretation and reliance upon various statutes which differ in the respective states. The majority opinion approves the refiling of the charge by virtue of its interpretation of Tit. 22 O.S.1951 § 817 which states that:

"An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense."

That this section should be construed in connection with Sec. 811, I do not agree. It is to be noted that Sec. 817 immediately follows the section providing the only other method of dismissal of a criminal prosecution for causes other than lack of a speedy trial. Sec. 815 provides:

"The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indict-

ment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes."

Sec. 817 no doubt is applicable in such situations. For instance, if the county attorney should dismiss because of insufficient evidence to convict and before the running of the statutes of limitations had acquired additional information, new witness discovered or old ones located, he could then under the provision of § 817 refile the same, or could dismiss because of error in the information, correct the error and refile the same previous to running of the statute of limitations. Whatever the reason for dismissal under § 815, said reason must be entered upon the minutes, and it was never intended that this section be used to dismiss because of the failure to grant defendant a speedy trial. If § 817 is to be construed in connection with § 811 it would be in direct contravention to the Constitution guaranteeing defendant a speedy trial and provides the means by which this Constitutional guarantee could be toyed with as putty and its significance diminished beyond respectful remembrance.

To permit a refiling under sec. 817, after a dismissal for lack of a speedy trial would be contrary to the 14th Amendment of the Constitution of the United States. The pertinent part thereof states:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is obvious to your writer to prosecute the defendant on said charge after he has been discharged therefrom and after he has been denied a speedy trial is to deprive him of his liberty, in case of conviction, without due process of law, to-wit: a speedy and public trial, and would deny him equal protection of the laws which have been guaranteed to every citizen of this state and the United States; because the same would abridge his privileges and immunities as is guaranteed under the Constitution.

The majority opinion relies upon Sec. 817 to distinguish such cases in this state from the holdings of other jurisdictions who have no such statutes. If the statute stating it is not a bar to further prosecution is not applicable or is in conflict with the Constitution guaranteeing a speedy trial, then and in that event, there is no distinction.

Under the Ohio statutes (66 laws p. 313) which provides that if the prisoner is not brought to trial before the end of the second term of the court held after the indictment is found "he shall be entitled to be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner." It was said in Ex parte McGehon, 22 Ohio St. 442:

"* * * that the discharge of the prisoner provided for is to be regarded, not as a mere temporary release from imprisonment, but as a discharge from prosecution for the crime or offense."

Erwin v. State, 29 Ohio St. 186, says:

"It is in effect, an acquittal, and the order granting it is a final judgment in the cause, and puts an end to all proceedings thereon."

Johnson v. State, 42 Ohio St. 207, says:

"Such a discharge is equivalent to a verdict of acquittal with judgment thereon."

The Supreme Court of Indiana in the case of McGuire v. Wallace, 109 Ind. 284, 10 N.E. 111, while discussing a dismissal for lack of a speedy trial had this to say:

If the state fails to bring the defendant to trial at the time of the court pointed out by the statute, he is entitled to his discharge, and such a discharge amounts to an acquittal of the offense.

Also see State v. Radoicich, 66 Minn. 294, 69 N.W. 25; Com. v. McBride, 2 Brewst., Pa. 545. A very lengthy and thorough opinion supporting this line of cases may also be found in State v. Wear, 145 Mo. 162, 46 S.W. 1099, quoting with approval from cases reported from Missouri, Ohio, Indiana, Georgia and Virginia.

It is contended that the variance in the wording of the statutes of various states causes different interpretation as to the finality of the dismissal. However, it appears to your writer that the intent of each of the state's statutes had as its primary purpose to support the Constitution in guaranteeing a speedy trial and to clearly define what constitutes due process as to the time allowed for the prosecution. The language used in Adcock's case, Com. v. Adcock, 8 Grat., Va., 661, 680, concerning the interpretation of the Virginia statute said:

"* * * The sole object and purpose of all the laws from first to last was to insure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little, if any less interesting to the public than to him, and the means, sanctions, or penalties it employed for stimulating prosecutors and officers of the law to diligence in the prosecution was by declaring that the consequence of a failure to indict or try in three terms should operate a discharge from the crime or acquittal."

Regardless of the numerous decisions placing emphasis upon the various interpretations to be given the statutes defining a speedy trial, to your writer it simply means that if the defendant is denied due process by failure to be given a speedy trial as guaranteed under the Constitution, and defined by statute, the prosecution is to be dismissed and the defendant forever discharged. The exception being "unless good cause be shown" or the delay was occasioned by the defendant.