Leon JORDAN, Petitioner,

v.

Howard PHILLIPS, District Judge of Pushmataha County, and Everett M. Robinson, County Attorney of Pushmataha County, Oklahoma, Respondents.

No. A-12750.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1959.

**602**

Geo. L. Hill, McAlester, Lee Welch, Antlers, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Joe Stamper, Antlers, for respondents.

POWELL, Presiding Judge.

Leon Jordan has filed herein a petition seeking a writ of mandamus from this Court to compel the District Judge and the County Attorney of Pushmataha County, Oklahoma, to dismiss cause No. 1900 now pending in the district court of that county, wherein defendant is charged with the murder of his wife.

The case in question was a companion case of No. 1901, wherein petitioner was charged with murder of Bill Donica, and convicted, after one mistrial, of manslaughter in the first degree. The facts of the two deaths are interwoven and arise out of the same incident, the details being set out in Jordan v. State, Okl.Cr., 327 P.2d 708 (April 9, 1958), wherein defendant Jordan appealed his conviction in case No. 1901 to this Court. Suffice to say, there was evidence of intoxication of the parties. The cited case may be referred to for details.

The two cases, numbered 1900 and 1901, were filed in the district court of Pushmataha County on January 7, 1955. No jury term was set in Pushmataha County in 1955. There was evidence that Lee Welch, Esq., then representing the defendant, was a member of the legislature and that following this he suffered a heart attack and was incapacitated for a time; that there were only four law firms in the county and that in deference to Mr. Welch, although he filed no formal request, it was agreed that no court be held. There was also evidence of the further fact that there was not sufficient funds available in 1955 to provide for holding a jury term of court. Defendant Jordan was at liberty on bond, and case No. 1901 was set for trial beginning on January 16, 1956 and resulted in a mistrial. Up to this time no formal demand for a trial had been made, so we pass over the question of whether at the time he would have been entitled to a dismissal. The two cases were reset on a trial docket commencing on April 20, 1957. Defendant, as stated, was convicted in case No. 1901 of manslaughter and punishment fixed at eight years confinement in the State Penitentiary.

Prior to trial on April 29, 1957 in case No. 1901, defendant on April 17, 1957 filed a written demand that he be first tried on the charge in case No. 1900, involving the death of his wife, or that the case be dismissed. He further objected to being thereafter at that term of court re-tried in case No. 1901, because, as it was said in the motion:

"The trial of both of such cases on the same docket to the same jury panel is and would be contrary to the accepted practice and rules of this court and contrary to the requirement that defendant be given a fair and impartial trial, and the setting of both such cases on the same docket and the publicizing of the fact to prospective jurors and the general public of the multiple homicide charges against defendant both theoretically and practically is unjust and unfair to defendant, and denied and denies him the right to a fair and impartial trial free of prejudice and bias."

Defendant also alleged that he had been denied a speedy trial in case No. 1901. The prayer of the motion in question reads:

"Wherefore, on account of the above and foregoing, defendant moves and asks the Court to dismiss said cause No. 1900 against him wherein he is charged with the murder of Lillian Jordan, or if such motion and request should not be properly granted, then this defendant

prays in lieu of such dismissal that he be tried as the first cause on such April 22, 1957, docket on the charge against him in said cause No. 1900 instead of on the charge against him in cause No. 1901 wherein he is charged with the murder of William V. Donica."

On May 6, 1957 prior to the adjournment of the term of court in progress, and after the conviction in case No. 1901, defendant in spite of his allegations and reasons advanced against the trying of the two cases in question at the same term of court, had a change of mind, and in writing demanded that case No. 1900 also be tried or in lieu thereof that the case be dismissed. The court overruled the motion.

Following this the July, 1957, the January and July, 1958, and the January, 1959 terms of court expired without trial of case No. 1901, and the July, 1959 term is well on the way of expiration. Nothing has been done. The matter of a speedy trial in 1959 is further complicated by reason of the fact that Hon. Lee Welch, defense counsel, is now county attorney, although the Hon. Joe Stamper remains as special prosecutor. The whole history of this case in a county so limited with attorneys and where funds for holding the two terms of court each year as provided by statute (20 O.S.1951 § 95) are apparently insufficient, presents a case for legislative study. Judge Barefoot many years ago called attention to such a situation, as did Judge Brett later (In · re Gregory, Okl.Cr., 309 P.2d 1083), but apparently the constituted legislative authorities did not hear.

 This Court specifically held in the Gregory case, supra, that if a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed unless good cause to the contrary be shown. And we further said that the failure to provide for a jury to try causes is one of the things the constitutional guaranty of a speedy trial was designated to meet. See: McLeod v. Graham, 6 Okl.Cr. 197, 118 P. 160; Glover v. State, 76 Okl.Cr. 53, 134 P.2d 144.

And while the argument of the State that there is a distinction between incarceration in jail on a charge where accused was unable to make an appearance bond and where the fact of incarceration makes demand for him, and in a situation as here where the accused, out on bond in one case is incarcerated in the State Penitentiary by reason of conviction in a separate case, need not be noticed because the accused has demanded and now demands a speedy trial in the pending case No. 1900.

The Bill of Rights of the Oklahoma Constitution, Art. II, § 6, provides:

"Right and justice shall be administered without sale, denial, delay or prejudice."

And, further, Art. II, § 20:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

Title 22 O.S.1951 § 812, provides:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

 We must hold that under the facts recited petitioner herein is entitled to have case No. 1900, wherein he is charged with the murder of his wife, dismissed because of the passage of the several terms of court since his conviction in case No. 1901. See In re Gregory, supra, State v. Dickson, Okl.Cr., 332 P.2d

1109 for general and further treatment of the constitutional and statutory provisions.

■ We would be derelict in our duty if we failed to call attention to the provisions of 22 O.S.1951 § 817, which reads:

"An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense."

The above section of the statute has been construed in connection with 22 O.S.1951 §§ 812, 815 and 816, in Ex parte Warrenburg, 1937, 63 Okl.Cr. 125, 73 P.2d 476. Other cases that should be read are Ex parte Warford, 3 Okl.Cr. 381, 106 P. 559; Hembree v. Howell, 90 Okl.Cr. 371, 214 P.2d 458; and note at pages 943–964 of 50 A.L.R.2d.

In the Warrenburg case, supra, Judge Barefoot quotes liberally from a case from the California Supreme Court: In re Begerow, 136 Cal. 293, 68 P. 773, 774, 56 L.R.A. 528, where the question of "speedy" trial is treated in some detail.

In State v. Dickson, supra (December, 1958) this Court incidentally referred to the rule set out in the Warrenburg and other cases from this Court but attention is called to the fact that Judge Nix concurred specially, and he does not agree with the Warrenburg and Hembree v. Howell cases. His opinion should be read in connection with Warrenburg.

Of course an impartial special assistant county attorney might decide, if the facts justified, not to refile the case in view of the claim of accidental killing of the wife. We do not know. See Galbraith v. Lackey, Okl.Cr., 340 P.2d 497, at page 502, quoting from Wilson v. State, 89 Okl. Cr. 421, 422, 209 P.2d 512, 212 P.2d 144, and Thacker v. Marshall, Okl.Cr., 331 P.2d 488, 490.

Writ of mandamus granted requiring the district judge of Pushmataha County to dismiss case No. 1900, State of Oklahoma v. Leon Jordan, now pending in that court.

BRETT, J., concurs.

NIX, J., concurs in conclusion as to dismissal. Dissents to paragraph 4 of the syllabus.

NIX, Judge (dissenting).

Syllabus 4 of the majority opinion is surplusage and has no place in the case at bar. The question is not before this court and voluntarily ruling upon a point of law which may only be anticipated can serve only the purpose of strengthening the position of my learned associates upon a question of law about which the court as now constituted has consistently disagreed. My oath to uphold and defend the Constitutions of the State and Nation, and my interpretation of that sacred document compel me to reiterate my opinion as to Syllabus 4 on every occasion wherein the matter presents itself.

As long as the Constitutions of the State of Oklahoma and the United States remain unchanged as to every citizen's inherent right to a speedy trial, I would feel derelict in my judicial duties if I ever remained silent or placed the seal of approval upon any decision which I earnestly felt made pure mockery of any phase of the Bill of Rights. My opinion as to Syllabus 4 was set forth heretofore in the case of State v. Dickson, Okl.Cr., 332 P.2d 1109, and with some changes I hereto attach same as my reasons for not concurring on Syllabus 4:

The majority opinion relative to the finality of the dismissal is supported by previous decisions of this court, all of which in my opinion, abridge, thwart, distort, and abuse Art. II, § 20 of the Constitution of the State which unequivocally guarantees an accused a public and speedy trial. That the trial court was correct in dismissing the case at bar, I heartily agree; but with that portion of the majority opinion approving a refiling of the same charge, I firmly disagree.

One need look no further for an example of the frivolity of such ruling, than

the case at bar, for what relief will be afforded the accused whose case has been dismissed for lack of a speedy trial guaranteed him under the Bill of Rights. When the mandate is spread the county attorney need only file another information, issue another warrant, take defendant into custody and keep said charge pending until the statute of limitation has run.

In the instant case the charge is murder. In such cases the statute never runs, the charge could be kept pending for a lifetime, as long as it was dismissed the first of every year, defendant re-arrested at the jail door with a new warrant upon the same offense and returned to his cell. If a second information can be filed, so can a third and a fourth, and so on, and thus the defendant be held without trial for an indefinite period in direct violation of the spirit of the Constitution, and our statute requiring criminal cases to be brought to trial within a specified period of time. It would leave the interpretation of the Constitution in the exclusive realm of the prosecutor to define in accord with his personal whim, caprice, or fancy, and to vex, harass, or abuse an accused without recourse. The right to a speedy trial is as ancient as the law itself. It was founded upon the provision that all persons charged with the commission of a crime are entitled to have their name cleared or their guilt adjudicated as hurriedly as possible. When the charge is filed the punishment of the accused begins. His reputation is immediately degraded, his name becomes a derogatory by-word, his business suffers and his family is tormented. His innocence should be quickly proclaimed or his guilt ascertained and his time begun. Unnecessary delay can generate irreparable damage to his defense. Witnesses could scatter, die, or forget, and in non-bailable cases, the avenue would be open for barbaric and indefinite prison confinement while awaiting a trial, the anticipation of which may be in vain.

The statute, Tit. 22 O.S.1951 § 812 reads as follows:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

In the opinion of your writer this statute is imperative and it means this, or nothing, and the dismissal, if defendant be entitled to it, must be absolute and without delay, because if he were liable to be again arrested and informed against for the same offense, the discharge would be pure mockery and the means of aggravating the evil which the statute sought to cure. To so hold would forever identify the foundation upon which the statute was built as sand.

Your writer chooses to believe that this section of our statute plainly exhibits the legislative desire and solicitude that the provisions of our Constitution guaranteeing a speedy trial should not fail in being enforced for the want of legislative aid.

The Constitution of the United States in the 6th Amendment provides that the accused shall enjoy the right to a speedy and a public trial. Art. 2, Sec. 20 of the Constitution of Oklahoma provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

Because of the uncertainty of the interpretation of a speedy trial as provided by the Constitution, the legislature rightfully implemented its meaning by defining a speedy trial by the enactment of 22 O.S. 1951 § 811 and § 812 which require a defendant to be brought to trial by the next term of court after the term in which he was informed against, or his prosecution dismissed unless good cause be shown. Following these two sections, § 814 provides:

"If the court direct the action to be dismissed, the defendant must, if in custody, be discharged therefrom, or if admitted to bail, his bail is exonerated, or money deposited instead of bail must be refunded."

We can readily observe the necessity for these statutes, the answer is plain. If we are left to the language of the Constitution without further guidance from the legislature, then the question as to what does or does not constitute, within the meaning of the constitutional provision, a speedy public trial, must in very instance rest in the discretion of the particular judge to whom the question may be addressed. Under the common-law regime—even at very ancient common law, a prisoner's right to a speedy trial was secured to him by a body known as the Commission of Jail Delivery, whereby the jails were cleared and the prisoners therein confined, either convicted or punished, or delivered from custody twice every year. 2 Hawk.P.C. ch. 6. It was the abolition of the Commission of Jail Delivery which has made necessary our later statutes defining the limit of the delay allowed the state in bringing alleged malefactors to trial. There are well-established exceptions to this fundamental right. It is well established that in order to benefit from our statutes securing a speedy trial, the accused must demand trial; if he does not make such demand he waives his right. However, if he is confined in jail the law makes demand for him, thus obliterating the possibility of the "forgotten prisoner." If the accused is at liberty on bail then in that event, he must make a demand for a speedy trial or his rights are waived. In conformity with this rule, the defendant must be afforded a speedy and public trial unless good cause may be shown. It requires our public officers to be diligent in performing their duties with expediency and without unnecessary delay. More adequate language cannot be found to relate the history, necessity and principles behind this theory than was used by Judge Tem-

ple of the Supreme Court of California in the case of In re Begerow, 133 Cal. 349, 65 P. 828, 56 L.R.A. 513, 516, wherein he dissertates upon the question of accused's rights to a speedy trial. He said:

"It is well to remember that this case involves fundamental rights, and is of universal interest. Around [those rights] the English have waged their great battle for liberty. Without the narration of the conflicts to which [they have] given rise, the history of the English people would be a dull affair. The right of the government with reference to persons accused of crime has been, and is yet, a matter of great consideration. It led to the agitation which wrung from power the great charter, the petition of right, and the habeas corpus act. All the great achievements in favor of individual liberty, of which the English people are so justly proud, may be said to have come through contests over the rights of persons imprisoned for supposed crime. And justly it is deemed a matter of the utmost importance. The government cannot take property from the meanest inhabitant without just compensation paid or tendered in advance, but it takes his liberty, which it has been justly said is to some extent to take his life, upon a mere charge of crime. This is necessary, that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And this is precisely what the state has covenanted with each inhabitant that it will not do. In this one provision of the constitution the state speaks as did the English sovereign in the great charter in 1215. It is an assurance from the sovereign, 'Nec super eum ibimus, nec super eum mittimus, nisi per legale judicium parium suorum, vel per legem terrae.' Hallam says, referring to this, 'From the era, therefore, of King John's

charter, it must have been a clear principle of our Constitution that no man can be detained in prison without trial.' 2 Hallam, Hist. Mid. Ages, 342. The state, then, in a criminal case is not only a party litigant, and as such bound to use diligence to prepare for trial, on pain of having its case dismissed, but it holds the defendant in custody upon this express guaranty for a speedy trial, and that it will not continue to hold him save under a legal verdict declaring him guilty * * *."

These principles in the opinion of your writer cannot be ignored by any jurist and the right to a speedy trial is accepted by all courts of the land. The conflicts and confusion have resulted from the interpretation and reliance upon various statutes which differ in the respective states. The majority opinion approves the refiling of the charge by virtue of its interpretation of Tit. 22 O.S.1951 § 817 which states that:

"An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense."

That this section should be construed in connection with § 811, I do not agree. It is to be noted that § 817 immediately follows the section providing the only other method of dismissal of a criminal prosecution for causes other than lack of a speedy trial. § 815 provides:

"The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order which must be entered upon the minutes."

§ 817 no doubt is applicable in such situations. For instance, if the county attorney should dismiss because of insufficient evidence to convict and before the running of the statutes of limitations had acquired additional information, new witnesses discovered or old ones located, he could then under the provision of § 817 refile the same, or could dismiss because of error in the information, correct the error and refile the same previous to running of the statute of limitations. Whatever the reason for dismissal under § 815, said reason must be entered upon the minutes, and it was never intended that this section be used to dismiss because of the failure to grant defendant a speedy trial. If § 817 is to be construed in connection with § 811 it would be in direct contravention of the Constitution guaranteeing defendant a speedy trial and provides the means by which this Constitutional guarantee could be toyed with as putty and its significance diminished beyond respectful remembrance.

To permit a refiling under § 817, after a dismissal for lack of a speedy trial would be contrary to the 14th Amendment of the Constitution of the United States. The pertinent part thereof states:

"No state shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is obvious to your writer to prosecute the defendant on said charge after he has been discharged therefrom and after he has been denied a speedy trial is to deprive him of his liberty, in case of conviction, without due process of law, to wit: a speedy and public trial, and would deny him equal protection of the laws which have been guaranteed to every citizen of this state and the United States, because the same would abridge his privileges and immunities as is guaranteed under the Constitution.

The majority opinion relies upon § 817 to distinguish such cases in this state from the holdings of other jurisdictions who have no such statutes. If the stat-

utes stating it is not a bar to further prosecution is not applicable or is in conflict with the Constitution guaranteeing a speedy trial, then and in that event, there is no distinction.

Under the Ohio statutes (66 Ohio Laws, p. 313) which provides that if the prisoner is not brought to trial before the end of the second term of the court held after the indictment is found "he shall be entitled to be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner." It was said in Ex parte McGehan, 22 Ohio St. 442:

> "* * * that the discharge of the prisoner provided for is to be regarded, not as a mere temporary release from imprisonment, but as a discharge from prosecution for the crime or offense."

Erwin v. State, 29 Ohio St. 186, says:

> "It is in effect, an acquittal, and the order granting it is a final judgment in the cause, and puts an end to all proceedings thereon."

Johnson v. State, 42 Ohio St. 207, says:

> "Such a discharge is equivalent to a verdict of acquittal with judgment thereon."

The Supreme Court of Indiana in the case of McGuire v. Wallace, 109 Ind. 284, 10 N.E. 111, 113, while discussing a dismissal for lack of a speedy trial had this to say:

> "If the state fails to bring the accused to trial at the next term, he is entitled to his discharge. Such a discharge amounts to an acquittal of the offense."

Also see State v. Radoicich, 66 Minn. 294, 69 N.W. 25; Com. v. McBride, 2 Brewst., Pa., 545. A very lengthy and thorough opinion supporting this line of cases may also be found in State v. Wear, 145 Mo. 162, 46 S.W. 1099, quoting with approval from cases reported from Missouri, Ohio, Indiana, Georgia, and Virginia.

It is contended that the variance in the wording of the statutes of various states causes different interpretation as to the finality of the dismissal. However, it appears to your writer that the intent of each of the state's statutes had as its primary purpose to support the Constitution in guaranteeing a speedy trial and to clearly define what constitutes due process as to the time allowed for the prosecution. The language used in Adcock's case (Com. v. Adcock), 8 Grat. 661, 680, 49 Va. 661, 680, concerning the interpretation of the Virginia statute said:

> "* * * The sole object and purpose of all the laws from first to last, was to insure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little if any less interesting to the public than to him, and the means, sanctions, or penalties it employed for stimulating prosecutors and officers of the law to diligence in the prosecution was by declaring that the consequence of a failure to indict or try in three terms should operate a discharge from the crime or acquittal."

Regardless of the numerous decisions placing emphasis upon the various interpretations to be given the statutes defining a speedy trial, to your writer it simply means that if the defendant is denied due process by failure to be given a speedy trial as guaranteed under the Constitution, and defined by statute, the prosecution is to be dismissed and the defendant forever discharged. The exception being "unless good cause be shown" or the delay was occasioned by the defendant.