Lawrence Jay SNOW, Petitioner,

v.

Bob TURNER, Sheriff, Oklahoma County, Oklahoma, and the State of Oklahoma, Respondents.

No. A-13805.

Court of Criminal Appeals of Oklahoma.

Oct. 6, 1965.

T. Hurley Jordan, Asst. Public Defender, for petitioner.

Albert J. Hoch, Asst. County Atty., Oklahoma County, for respondents.

NIX, Judge.

This is an original proceedings for a Writ of Habeas Corpus filed by Lawrence Jay Snow seeking his release from the County Jail of Oklahoma County; where he contends he is being illegally restrained. It is contended by petitioner that said illegal restraint is the result of a refusal of the trial judge to sustain a motion to dismiss the charge under which he is held. The motion being based on lack of a speedy trial guaranteed him under the statute and Constitution of the State of Oklahoma. Petitioner further asserts that he was charged with Robbery with Firearms, taken into custody, and placed in jail on December 6, 1964, where he has continuously remained until this cause was filed in the Court of Criminal Appeals September 21, 1965. That said period of confinement exceeds two terms of court in which he was never brought to trial. That he has requested a speedy trial and never at any time asked for said cause to be continued. Petitioner contends that said delay violated his Constitutional Rights and he is entitled to be forever discharged. Petitioner bases his argument upon the Bill of Rights of the Oklahoma Constitution, Article 2, § 6, which provides:

"[R]ight and justice shall be administered without sale, denial, delay or prejudice."

And, further, Article 2, § 20:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

And, further, that he should be discharged by virtue of Title 22, O.S.1951, § 812, which provides:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution dismissed unless good cause to the contrary be shown."

This Court has held in numerous cases that the above statute must be complied with, and when it is violated the defendant is entitled to be discharged. (See, Jordan v. Phillips, Okl.Cr., 344 P.2d 600; In re Gregory, Okl. Cr., 309 P.2d 1083; Glover v. State, 76 Okl.Cr. 53, 134 P.2d 144; Culver v. State, 11 Okl.Cr. 4, 141 P. 26.)

■ The state contends in the instant case that it is distinguishable from previous holdings of this Court in that there was good cause shown for the delay. The state argued that they first attempted to contact one of the complaining witnesses in May of 1965, and found that she was scheduled to enter the hospital for surgery and the other witness was in Utah looking after her brother, who was ill and later died. And further, that defendant who was filed upon first on the charge in 1960, and had been absent from the state until December 6, 1964. The record reflects that this case was first set for trial April 20, 1965, approximately 5 months after defendant was taken into custody. The record further shows that no subpoena's were issued at that time. It was again set for trial May 10, 1965, and re-set at the state's request for June 16, 1965, and continued at state's request. This cause was again set for trial on September 22, 1965 and the record reflects that no subpoena's were issued. In ten months of continuous confinement of defendant, the case was set 4 times, and in each instance was continued without the consent of defendant, except the last on September 22, 1965, which was stayed by the trial court by his order directing defendant to appeal to this Court on the question herein involved.

These facts, as related, do not, in the Court's opinion, show good cause for said delay, as to justify nullification of the effects of Title 22, O.S.1951, § 812, supra.

The attorney for the state admitted during argument before this Court, that his first attempt to contact the complaining witness was about May 1, 1965, approximately 5 months after petitioner's confinement. He found one witness planning on entering a hospital here in Oklahoma City, and later, another visiting her sick brother in Utah. With due diligence they could have been contacted at an earlier date. They do not state how long the witness was to be hospitalized, or how long the other was to be with her sick brother, or whether the other eight witnesses listed on the information were available or not. Neither were the witnesses subpoenaed for the September Docket. This does not show good cause as contemplated by the Statute.

■ The evident purpose of these provisions of the Constitution and Statute is to require of the officers of the law that they exercise reasonable diligence in preparing for trial of criminal cases, and to secure to each person charged with crime, a trial as soon after the indictment or information has been filed against them as the prosecution can with reasonable diligence prepare for trial; regard being had to the terms of court.

It has been said that good cause must be some "legal reason" or delay caused by operation of the "rules of law". See, McLeod v. Graham, 6 Okl.Cr. 197, pg. 204, 118 P. 160.

■ It has never been made quite clear what constitutes good cause as contemplated by the statute (Title 22, OSA, § 812) but we know it cannot be presumed but must be shown (McLeod v. Graham, supra), and the reason should be stated in such cases in connection with each continuance by the court and made a part of the record. Each case therefore, stands on its own merits.

A person charged with a criminal offense has a right to a speedy trial in order that, if innocent, he may go free. To detain him in custody, or to compel him by the exaction of bail, to dance attendance upon a court while his trial is arbitrarily postponed without his consent, is not only wrong and an injustice to him, but a detriment to the public. The design of the statute, § 812, above quoted, in the opinion of the Court, is to prevent these evils.

It is very safe to say the Legislature would never have enacted such a law if this were the only case in which it could be made effective. The truth is, the law was enacted, like all similar provisions relating to criminal procedure, for the benefit of the innocent and not for the sake of screening the guilty. It is true with respect to this, as with respect to all rules of procedure deemed necessary for the security of innocent men unjustly accused. Guilty men also, being deemed innocent until proven guilty, have the right to take advantage of these rights to a speedy trial, and have right and justice administered without sale, denial, delay or prejudice.

■ After thoroughly reviewing the facts in the case and for the reasons heretofore stated, it is the opinion of this Court that the petitioner is entitled to be discharged from custody and the charge under which he is hereby held, dismissed.

The Writ is, therefore, granted.

■ The petitioner also prays that the State be prohibited from refiling said case.

Though this proposition is not squarely before the Court, it may serve to avoid additional litigation for the Court to state its opinion as to the finality of the dismissal.

Your writer has gone into the matter quite thoroughly in a lengthy dissent in the case of State v. Dickson, Okl.Cr., 332 P.2d 1109, which, with a few minor changes will be reiterated here and it is hereby adopted as the law in this State in such cases, overruling decisions to the contrary.

As long as the Constitutions of the State of Oklahoma and the United States remain unchanged as to every citizen's inherent right to a speedy trial, I would feel derelict in my judicial duties if I ever remained silent or placed the seal of approval upon any decision which I earnestly felt made pure mockery of any phase of the Bill of Rights.

The majority opinion [1] relative to the finality of the dismissal is supported by previous decisions of this Court, all of which, in my opinion, abridge, thwart, distort, and abuse Art. 2, § 20 of the Constitution of the State which unequivocally guarantees an accused a public and speedy trial. That the trial court was correct in dismissing the case at bar, I heartily agree; but with that portion of the majority opinion approving a refiling of the same charge, I firmly disagree.

One need look no further for an example of the frivolity of such ruling, than the case at bar, for what relief will be afforded the accused whose case has been dismissed for lack of a speedy trial guaranteed him under the Bill of Rights when the mandate is spread, the county attorney need only file another information, issue another warrant, take defendant into custody and keep said charge pending until the statute of limitation has run. In such cases where the statute never runs, the charge could be kept pending for a lifetime, as long as it was dismissed the first of every year, defendant re-arrested at the jail door with a new warrant upon the same offense and returned to his cell. If a second information can be filed, so can a third and a fourth, and so on; and thus the defendant be held without trial for an indefinite period in direct violation of the spirit of the Constitution, and our statute requiring criminal cases to be brought to trial within a specified period of time. It would leave the interpretation of the Constitution in the exclusive realm of the prosecutor to define in accord with his personal whim, caprice, or

1. Herein overruled.

fancy; and to vex, harass, or abuse an accused without recourse.

The right to a speedy trial is as ancient as the law itself. It was founded upon the provision that all persons charged with the commission of a crime are entitled to have their name cleared or their guilt adjudicated as hurriedly as possible. The punishment of an accused begins when the charge is filed. His reputation is immediately degraded, his name becomes a derogatory by-word; his business suffers and his family is tormented. His innocence should be quickly proclaimed or his guilt ascertained and his time begun. Unnecessary delay on the part of the state can generate irreparable damage to his defense. Witnesses could scatter, die, or forget; and in non-bailable cases, the avenue would be open for barbaric and indefinite prison confinement while awaiting a trial—the anticipation of which may be in vain.

The statute, Title 22, O.S.1951, § 812, reads as follows:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

It is the opinion of your writer this statute is imperative and it means this, or nothing, and the dismissal, if defendant be entitled to it, must be absolute and without delay, because if he were liable to be again arrested and informed against for the same offense, the discharge would be pure mockery and the means of aggravating the evil which the statute sought to cure. To so hold would forever identify the foundation upon which the statute was built as sand.

Your writer chooses to believe that this section of our statute plainly exhibits the legislative desire and solicitude that the provisions of our Constitution guaranteeing a speedy trial should not fail in being enforced for the want of legislative aid.

The Constitution of the United States in the VI Amendment provides that the accused shall enjoy the right to a speedy and a public trial. Article 2, § 20, of the Constitution of Oklahoma provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

Because of the uncertainty of the interpretation of a speedy trial as provided by the Constitution, the legislature rightfully implemented its meaning by defining a speedy trial by the enactment of 22 O.S.1951, § 811 and § 812, which require a defendant to be brought to trial by the next term of court after the term in which he was informed against, or his prosecution dismissed unless good cause be shown. Following these two sections, § 814 provides:

"If the court direct the action to be dismissed, the defendant must, if in custody, be discharged therefrom, or if admitted to bail, his bail is exonerated, or money deposited instead of bail must be refunded to him."

We can readily observe the necessity for these statutes, the answer is plain. If we are left to the language of the Constitution without further guidance from the legislature, then the question as to what does or does not constitute, within the meaning of the Constitutional provision, a speedy public trial, must in every instance rest in the discretion of the particular judge to whom the question may be addressed. Under the common-law regime—even at very ancient common-law—a prisoner's right to a speedy trial was secured to him by a body known as the Commission of Jail Delivery, whereby the jails were cleared and the prisoners therein confined, either convicted or punished, or delivered from custody twice every year. 2 Hawk. P.C. chp. 6. It was the abolition of the Commission of Jail Delivery which has made necessary our later statutes defining the limit of the delay allowed the state in bringing alleged malefactors to trial. There are well established

exceptions to this fundamental right. It is well established that in order to benefit from our statutes securing a speedy trial, the accused must demand trial; if he does not make such demand he waives his right. However, if he is confined in jail the law makes demand for him, thus obliterating the possibility of the "forgotten prisoner". If the accused is at liberty on bail, then in that event, he must make a demand for a speedy trial or his rights are waived. In conformity with this rule, the defendant must be afforded a speedy and public trial unless good cause may be shown. It requires our public officers to be diligent in performing their duties with expediency and without unnecessary delay. More adequate language cannot be found to relate the history, necessity and principles behind this theory than was used by Judge Temple of the Supreme Court of California in the case of Re Begerow, 133 Cal. 349, 65 P. 828, 56 L.R.A. 513, 516, wherein he dissertates upon the question of accused's rights to a speedy trial. He said:

"It is well to remember that this case involves fundamental rights and is of universal interest. Around it the English have waged their great battle for liberty. Without the narration of the conflicts to which it has given rise, the history of the English people would be a dull affair. The right of the government with reference to persons accused of crime has been, and is yet, a matter of great consideration. It led to the agitation which wrung from power the great charter, the petition of right, and the habeas corpus act. All the great achievements in favor of individual liberty, of which the English people are so justly proud, may be said to have come through contests over the rights of persons imprisoned for supposed crime. And justly it is deemed a matter of the utmost importance. The government cannot take property from the meanest inhabitant without just compensation paid or tendered in advance, but it takes his liberty, which it has been justly said is to some extent to take his life, upon a mere charge of crime. This is necessary, that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And this is precisely what the state has covenanted with each inhabitant that it will not do. In this one provision of the constitution the state speaks as did the English sovereign in the great charter in 1215. It is an assurance from the sovereign, 'Nec super eum ibimus, nec super eum mittimus, nisi per legale judicium parium suorum, vel per legem terroe. Hallam says, referring to this, 'From the era, therefore, of King John's charter, it must have been a clear principle of our constitution that no man can be detained in prison without trial.' 2 [Hallam], Hist.Mid. Ages, 342. The state, then, in a criminal case is not only a party litigant, and as such bound to use diligence to prepare for trial, on pain of having its case dismissed, but it holds the defendant in custody upon this express guaranty for a speedy trial, and that it will not continue to hold him save under a legal verdict declaring him guilty * * *."

These principals, in the opinion of your writer, cannot be ignored by any jurist and the right to a speedy trial is accepted by all courts of the land. The conflicts and confusion has resulted from the interpretation and reliance upon various statutes which differ in the respective states. The majority opinion [1] approves the refiling of the charge by virtue of its interpretation of 22 O.S.1951, § 817 which states that:

"An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense."

That this section should be construed in connection with § 811 and § 812, I do not agree. It is to be noted that § 817 im-

1. Herein overruled.

mediately follows the section providing the only other method of dismissal of a criminal prosecution for causes other than lack of a speedy trial.

Title 22, § 815, provides:

"The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes."

§ 817 no doubt, is applicable in such situations. For instance, if defendant was not in jail and had not made demand for trial, the county attorney could dismiss because of insufficient evidence to convict and before the running of the statutes of limitations, had acquired additional information, new witnesses discovered or old ones located, he could then under the provision of § 817 refile the same, or could dismiss because of error in the information, correct the error and refile the same previous to running of the statute of limitations. Whatever the reason for dismissal under § 815, said reason must be entered upon the minutes, and it was never intended that this section be used to dismiss because of the failure to grant defendant a speedy trial. If § 817 is to be construed in connection with § 811, it would be in direct contravention of the Constitution guaranteeing defendant a speedy trial and provides the means by which this Constitutional guarantee could be toyed with as putty and its significance diminished beyond respectful remembrance.

To permit a refiling under § 817, after a dismissal for lack of a speedy trial, would be contrary to the 14th Amendment of the Constitution of the United States. The pertinent part thereof states:

"No State shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is obvious to your writer to prosecute the defendant on said charge after he has been discharged therefrom and after he has been denied a speedy trial is to deprive him of his liberty, in case of conviction, without due process of law, to-wit: A speedy and public trial; and would deny him equal protection of the laws which have been guaranteed to every citizen of this State and the United States, because the same would abridge his privileges and immunities as is guaranteed under the Constitution.

The majority opinion relies upon § 817 to distinguish such cases in this state from the holdings of other jurisdictions who have no such statutes. If the statutes stating it is not a bar to further prosecution is not applicable or is in conflict with the Constitution guaranteeing a speedy trial, then and in that event, there is no distinction.

Under the Ohio statutes (66 Ohio Laws, p. 313) which provides that if the prisoner is not brought to trial before the end of the second term of the court held after the indictment is found "he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner." It was said in Ex parte: McGehon, 22 Ohio St. 442:

"* * * that the discharge of the prisoner provided for is to be regarded, not as mere temporary release from imprisonment, but as a discharge from prosecution for the crime or offense."

Erwin v. State, 29 Ohio St. 186, says:

"It is in effect, an acquittal, and the order granting it is a final judgment in the cause, and puts an end to all proceeding thereon."

Johnson v. State, 42 Ohio St. 207, says:

"Such a discharge is equivalent to a verdict of acquittal with judgment thereon."

The Supreme Court of Indiana in the case of McGuire v. Wallace, 109 Ind. 284, 10

N.E. 111, while discussing a dismissal for lack of a speedy trial had this to say:

> "If the state fails to bring the defendant to trial at the time of the court pointed out by the statute, he is entitled to his discharge, and such a discharge amounts to an acquittal of the offense."

Also, see State v. Radoicich, 66 Minn. 294, 69 N.W. 25; Com. v. McBride, 2 Brewst., Pa., 545. A very lengthy and thorough opinion supporting this line of cases may also be found in State v. Wear, 145 Mo. 162, 46 S.W. 1099, quoting with approval from cases reported from Missouri, Ohio, Indiana, Georgia, and Virginia.

It is contended that the variance in the wording of the statutes of various states causes different interpretation as to the finality of the dismissal. However, it appears to your writer that the intent of each of the state's statutes had as its primary purpose to support the Constitution in guaranteeing a speedy trial and to clearly define what constitutes due process as to the time allowed for the prosecution. The language used in Adocks case, Com. v. Adock, 8 Grat. 661, 680, 49 Va. 661, 680, concerning the interpretation of the Virginia statute said:

> " * * * the sole object and purpose of all the laws from first to last, was to insure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little if any less interesting to the public than to him, and the means, sanctions, or penalties it employed for stimulating prosecutors and officers of the law to diligence in the prosecution was by declaring that the consequence of a failure to indict or try in three terms should operate a discharge from the crime or acquittal."

Regardless of the numerous decisions placing emphasis upon the various interpretations to be given the statutes defining a speedy trial, to your writer it simply means that if the defendant is denied due process by failure to be given a speedy trial as guar-

anteed under the Constitution, and defined by statute, the prosecution is to be dismissed and the defendant forever discharged. The exception being "unless good cause be shown" or the delay was occasioned by the defendant.

Therefore, the Writ is Granted Discharging the petitioner, Lawrence Jay Snow, from custody ordering the case dismissed and it should not be refiled.

BUSSEY, P. J., and BRETT, J., concur.