The STATE of Oklahoma ex rel. Burns
TRUSTY, Jr., Petitioner,

v.

Hon. Raymond W. GRAHAM, Judge of the
District Court of Tulsa County,
Respondent.

No. O–74–41.

Court of Criminal Appeals of Oklahoma.

July 25, 1974.

Jack B. Sellers, Sapulpa, for petitioner.

S. M. Fallis, Jr., Dist. Atty., Tulsa County, Jerry E. Truster, Asst. Dist. Atty., Tulsa County, for respondent.

## DECISION AND OPINION

BRETT, Judge:

This is an original proceeding in which petitioner, Burns Trusty, Jr., hereinafter referred to as petitioner, is seeking issuance of the Writ of Mandamus to require dismissal of an information in Tulsa County District Court Case No. CRF–70–1901, because of denial of a speedy trial. This Court waived its Rule 1.23, accepted jurisdiction and entered an order staying further proceedings in petitioner's case until this proceeding is concluded.

Petitioner was tried in the Tulsa County District Court on February 10, 1971, on a charge of Burglary of an Automobile, After Former Conviction of a Felony, and was sentenced to serve ten (10) years imprisonment. That conviction was appealed to this Court and on September 27, 1972, was reversed and remanded for a new trial. See Okl.Cr., 501 P.2d 1142 (1972). The mandate issued on October 13, 1972, and was spread of record in the trial court on October 17, 1972.

Subsequent to the burglary conviction, while petitioner's appeal was pending, petitioner was again convicted for the offense of Feloniously Carrying a Firearm, After Former Conviction of a Felony, and was sentenced to ten (10) years imprisonment

in Tulsa County District Court Case No. CRF–71–18.

The instant mandamus proceeding resulted when petitioner's new counsel, who stated to the trial court that he was serving petitioner without fee, appeared before the trial court on January 17, 1974, and moved to dismiss petitioner's new trial because of denial of a speedy trial, and the violation of petitioner's constitutional and statutory rights. By the time the new trial was finally set down on January 15, 1974, some fifteen months had passed since petitioner's conviction was remanded by this Court. Counsel pointed out to the trial court that the new trial was initially set for January 15th, and was then set-over to January 16th, but the prosecutor handling petitioner's case commenced the trial of another case. The judge explained at this point that the prosecution was unable to locate its witness and said, "[M]r. Truster [the prosecutor] has informed, I think, all of us that he cannot locate his witness, and he has previously notified that witness by agreement with the defense counsel at that time to pass it until the 23rd." Assistant District Attorney Truster then explained to the court that the witness who incurred the loss at the scene, Mr. Wallace, had not received the subpoena because he had moved to a new address; and he related the situation to Public Defender Brunton, who agreed to the date of January 23, 1974; but Mr. Truster related further that he advised the witness "we would notify him as to the absolute date of the 23rd, that it may have to be delayed until the following week, but it would be tried during the month of January to dispose of the case, and he [the witness] said that would be fine and that he had moved and gave me a new address. . . ." Mr. Truster continued to explain that another problem existed in that Mr. Pat Thompson, who conducted the initial trial and who would be called as a witness in the re-trial, because of a death in his family had just returned to work; and considering all the existing circumstances taken as a whole, the court should deny petitioner's motion to dismiss.

It appears also that no jurors were available to try the case on January 17th, so petitioner's counsel requested the court to send the sheriff on the street to obtain a Venire to try the case that date. The court denied petitioner's motion to dismiss and set the matter for trial January 21, 1974. Thereafter, petitioner filed his petition in this Court for issuance of the Writ of Mandamus to dismiss the charge pending against petitioner.

Since January 4, 1971, when petitioner was arrested on the firearms charge, petitioner has been continuously incarcerated in either the Tulsa County Jail, the Oklahoma State Penitentiary, or in some other county jail, under proper court orders. Consequently, petitioner asserts that because of his incarceration and his availability, he was entitled to have received a speedy trial in accordance with this Court's decision which reversed and remanded his conviction for a new trial; and insofar as some fifteen (15) months have passed between the time his conviction was reversed and remanded and the filing of the instant petition, that his constitutional right to a speedy trial and his right under the provisions of 22 O.S.1971, § 812 have been violated, and therefore the alleged charge of burglary on an automobile should be dismissed.

This matter was set down for hearing before this Court, which was had on January 24, 1974, and after hearing arguments, the Court assumed jurisdiction and remanded the matter back to the Tulsa County District Court for evidentiary hearing, "to conduct, an evidentiary hearing on the issue of whether the petitioner has been denied his right to a speedy trial and [was] prejudiced thereby." The said order provided further, "Insofar as the riots and burning of the state penitentiary may relate to this issue, the respective parties may produce evidence of the time of the occurrence of said riots, . . . and the availability of the Petitioner to stand trial in the District Court of Tulsa County on the new trial as directed by this Court in Case No. CRF–70–1901." The said evi-

dentiary hearing has been conducted and the record of that hearing is now on file with this Court.

Petitioner was represented at his first trial by retained counsel; but because of his later condition on indigency, the trial court appointed the Public Defender to perfect the appeal from his conviction. Initially, petitioner was represented by Public Defender Curtis A. Parks, but on remand of the conviction, Public Defender Paul Brunton was assigned petitioner's case. At the evidentiary hearing Mr. Brunton and petitioner both testified.

At the evidentiary hearing certain stipulations were entered into between counsel. At the commencement of the hearing, petitioner's counsel stated, "Now, at the outset I'd like to say that I concede and I conceded before the Court of Criminal Appeals that subsequent to October 11, 1973, the case was passed from time to time until January 15, 1974, at the request of the accused, and our complaint of denial of speedy trial under the statutory provision and this Constitutional provision is not based on that area of time, but rather we say had been denied, and the prisoner was entitled to be released from this charge prior to that area of time."

It was also agreed at this hearing that each and every month from and after October 17, 1972, down to the date of the evidentiary hearing, there has been a jury docket and a jury panel called and available to try petitioner's case in the Tulsa County District Court.

It was agreed that the transcript of the hearing had before the Honorable Raymond W. Graham on February 23rd and 24th, 1973, in this same case, should be incorporated as part of this evidentiary hearing record. It was admitted further that the appearance docket was not entirely accurate; and that one purpose for the instant evidentiary hearing was to clarify certain entries shown on the appearance docket in case number CRF–70–1901.

Mr. Charles C. Chesnut, Chairman of the State Pardon and Parole Board, established that in the event petitioner should be considered for parole, that this pending matter would not be grounds "per se" for denial of parole. Mr. Dale Gossett of the State Penitentiary established that there was no directive or policy issued by the penal authorities which would have precluded the honoring of any judicial order to make an inmate available for court appearance, during and immediately following the penitentiary riot. Mr. Homer Sprinkle of the Department of Corrections also established that he had no knowledge of any directive or policy pertaining to failure to honor judicial orders during the said riot period.[1]

Mr. Roy Rogers testified at the evidentiary hearing that he was responsible for security of that portion of the prison yards where petitioner was located during the riot period; and, that petitioner could have been made available for delivery on presentment of a proper judicial order.

We are therefore bound to conclude that the penitentiary riot in no manner contributed to the alleged delay of petitioner's re-trial in case number CRF–70–1901.

Petitioner was called to testify only as to matters pertaining to his whereabouts during the period of time, as it pertained to the alleged denial of a speedy trial. Petitioner testified that he was incarcerated in the State Penitentiary under the second judgment and sentence, CRF–71–18. February 18, 1972, he was returned to Tulsa for an evidentiary hearing concerning the instant matter. In June, 1972, he was delivered to the Osage County Jail at Pawhuska, Oklahoma, to testify in one of Lester Pugh's trials. In September, 1972, he was returned to Tulsa to be a witness in the Lester Pugh trial conducted in Tulsa; he was returned to the penitentiary on the following October 17th or 18th. About December 5, 1972, he was returned to Tulsa County for a re-trial of the instant convic-

1. These facts were established by telephone conversations with the respective parties, by agreement.

tion, but his trial was postponed without his counsel's knowledge. On January 8, 1973, petitioner was delivered to the Pottawatomie County Jail at Shawnee to testify in the Albert McDonald trial; on the following 17th he was returned to Tulsa County Jail where he remained until January 22nd or 23rd, when he was returned to the State Penitentiary. He remained in the penitentiary until September 26, 1973, when he was again returned to Tulsa County to stand his new trial. He has been in the Tulsa County Jail since that date, because of the stay order issued by this Court in these proceedings.

With reference to the appearance docket entries, petitioner admitted that on December 11, 1972, he was taken before Judge Lamm when his case was passed because defense counsel was not present.[2] He also admitted that he appeared before Judge Green on January 5, 1973, with his counsel being present, but petitioner testified, "They somehow agreed to pass this case so I could be in Shawnee on a writ on the following Monday." That was when he testified as a witness for the State in the Albert McDonald trial, but petitioner asserted that neither he nor his counsel requested the postponement of trial. He testified that he again appeared before the court on October 11, 1973; and that he did not request in writing or orally between January 5, 1973 and October 11, 1973, that his trial be postponed.

During cross-examination, defense counsel stipulated, with reference to petitioner's first trial, that the same persons are presently available to testify that were available at petitioner's first trial; but he did not stipulate that those witnesses are capable of effectively aiding the defense by reason of the passage of time. The cross-examination of petitioner consisted of

trying to reconcile petitioner's presence in Tulsa County with the appearance docket entries. Some entries coincided with petitioner's statements and others did not exactly coincide.

Public Defender Paul Brunton[3] testified that he was assigned as petitioner's counsel about October or November, 1972, when he discussed the reversal of petitioner's conviction and preparation for the new trial; and that he was the only attorney petitioner had until January 10, 1974, when Mr. Jack Sellers became interested in petitioner's plight. Mr. Brunton testified that he was not present on December 11, 1972, when Judge Lamm set the case on the January trial docket, nor was he aware of any order that was issued setting the case for trial during January 1973, but he did appear with petitioner before Judge Green on January 5, 1973, when the case was continued so petitioner could testify in Albert McDonald's trial in Shawnee. He testified that on March 12, 1973, he was engaged in the Castleberry trial; and, so far as he knew on that date petitioner was in the State Penitentiary.[4] Mr. Brunton admitted that if he had a discussion with some member of the district attorney's staff during March, 1973, the case would have been passed because he was involved in the Castleberry trial. Contrary to the March 12th docket entry, petitioner had testified that he was in the State Penitentiary on March 12, 1973. The April 4th entry reflects that the trial was stricken because petitioner was "in State Pen. serving term. Case stricken to be reset on application of State or Defence. (Sic)"

Mr. Brunton testified that he was not notified by anyone that petitioner's case had been reset for trial during September or October, 1973, as reflected by the appear-

---

2. The appearance docket merely recites: "12–11–72, Case set on Jan Jury trial Docket and eft. (sic) remanded. ML."

3. Brunton ceased being public defender on January 15, 1974, when he entered private practice.

4. The March 12th minute is one in question. It recites: "Def. present in OPBB (sic) Court and Atty. Paul Brunton, not present State Rep. by Cliff Hopper. Atty. Brunton in agreement with Cliff Hopper. Req. case paased (sic) to April Jury Docket. Def. to remain in custody of Sheriff. RWG."

ance docket. He testified that he filed an application for writ of habeas corpus ad prosequendum on August 9, 1973, but he received no response to the writ; and later on September 21, 1973, he filed a second such application which was executed by the Tulsa County Sheriff. Consequently, he testified that the appearance on October 11, 1973, was the only one he recalled after his appearance before Judge Green on January 5, 1973.

On cross-examination Mr. Brunton related that the only entry on his file folder showed that the re-trial had been set for January 10, 1973. He related that the Castleberry case consumed much of his personal time; and he reiterated that he did not recall making an appearance before Judge Graham on behalf of petitioner on March 12, 1973, as reflected by the docket sheet. When asked whether or not it might have been possible that he discussed the case with one of the prosecutors and "that the entry on the docket sheet reflecting that your self would be in agreement with Cliff Hopper to request that the case of State versus Burns Trusty, Jr., be passed to the April Jury docket?" was correct; Mr. Brunton replied that he had some discussion, but he couldn't remember with which prosecutor they were had; and he said "I would probably say that it's [the appearance docket entry] in essence correct." He admitted also that it was possible that one of the other staff members of the Public Defender's Office might have passed on the word to the prosecutor handling petitioner's case in court that the new trial should be continued. However, petitioner's counsel at this hearing, Mr. Sellers, entered his objection to the appearance docket entry of March 12, 1973, because "it begins with recitation that the defendant was present in open court whereas the undisputed evidence up to this point is that he was in the state penitentiary"; so, he objected to the continued line of questions intended to rehabilitate the docket entry. Nonetheless the prosecutor was permitted to ask if he might have agreed to passing the case, even though petitioner was still in the penitentiary. Mr. Brunton admitted that he might have agreed to the passing of the case, but said, "Whether or not Buddy Trusty or any agreement to pass the case without him being present was ever entered into, I really doubt that."

The next entry inquired into concerned September 13, 1973. Mr. Brunton specifically stated that he did not agree to the passing of the case to the October jury docket and said, "I had filed a writ of habeas corpus ad prosequendum in August, and I had not heard from anyone as to whether or not he [petitioner] would be back in Tulsa. In fact, my first independent recollection of when he returned was sometime in October." He related that the habeas corpus petition was filed to get petitioner back for trial; but he had not filed any other motion demanding a speedy trial, because that was the purpose for the habeas corpus action. He testified that the second petition for writ of habeas corpus ad prosequendum was filed because he received no reply from the first one. When pressed for a reason why he didn't file a motion for dismissal because of denial of speedy trial, Mr. Brunton answered, "Personally I didn't think I would get anywhere on a motion to dismiss on the grounds of lack of a speedy trial."

Referring to possible prejudice to petitioner because of the delay in trial, petitioner testified that he had three witnesses ready for the trial set for January 15, 1974. They were: Herman Neal, Jackie Robinson and David Evans. Evans was the one witness petitioner offered at his original trial. Mr. Brunton testified that he knew of one witness, Herman Neal, continuously; and that he was under the impression that two of the witnesses were "somewhere in the Department of Corrections system." Mr. Brunton said that he learned of another witness through correspondence with petitioner. He offered a letter dated October 24, 1972, in which petitioner also requested that his counsel obtain a new trial for him,

and seek to disqualify all the Tulsa County Judges, who petitioner felt were prejudiced toward him. On redirect examination, Mr. Brunton testified that he learned of another witness from reading the record of the earlier evidentiary hearing and the testimony of Herman Hoyle Neal. He said that he went to the State Penitentiary to interview the witness, but when he arrived there he learned that the witness had committed suicide while in the penitentiary. He testified that he thought the deceased witness' testimony would have been material to petitioner's defense. He likewise testified that he believed the fifteen month delay prejudiced petitioner, because of the inability of witnesses to properly recall all the facts of the case.

In this matter petitioner relies heavily on this Court's decision in Snow v. Turner, Okl.Cr., 406 P.2d 509 (1965); whereas, the prosecution relies on the United States Supreme Court decision in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

There is a distinguishing feature of petitioner's matter from that of Willie Mae Barker in Barker v. Wingo, supra. At the time of trial Barker had been free on bail for over four years; whereas petitioner herein remained incarcerated in the penitentiary.

In Barker v. Wingo, supra, the Supreme Court stated in the dictum of that decision:

"A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." at p. 527, 407 U.S., at p. 2190, 92 S.Ct., at p. 115, 33 L.Ed.2d.

and immediately thereafter, the Honorable Court stated further:

"But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." at p. 529, 407 U. S., at p. 2191, 92 S.Ct., at p. 116, 33 L. Ed.2d.

This Court held in the matter styled In re Jones, 77 Okl.Cr. 411, 413, 142 P.2d 137, 139 (1943):

"It has been held by this court that when a case has been reversed by this court that the defendant is then placed in the same position that he was in prior to the trial of his case in the lower court. Watson v. State, 26 Okl.Cr. 377, 224 P. 368; Clapp v. State, 74 Okl.Cr. 144, 124 P.2d 267."

Article 2, Section 20, of the Oklahoma Constitution provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

In Snow v. Turner, supra, this Court interpreted the provisions of 22 O.S. § 812, as follows:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution dismissed, unless good cause to the contrary be shown."

Under the "Snow Rule" one informed against was required to be put to trial within a maximum period of twelve months, considering two terms of court. But under the present statutes, the "term of court" referred to in the foregoing statute is no longer applicable. 20 O.S. § 95, which provided for two terms of court each year, was repealed by the 1969 Session of the Legislature. See: Chapter 134, 1969 Session Laws, p. 160; See also: Orthopedic Clinic v. Jennings, Okl., 481 P.2d 139, 140 (1971) and Broadway v. State, 494 P.2d 331, 336 (Okl.Cr.1972).

In this Court's decision in Broadway v. State, supra, this Court cited Coggins v. Shumate, Okl.Cr., 401 P.2d 995 (1965), wherein it stated:

"Generally speaking, a 'speedy trial' is one conducted according to prevailing

rules, regulations, and proceedings of law free from arbitrary, vexatious and oppressive delays. The right does not require a trial immediately upon arrest, or the filing of an indictment or information; but requires that the trial be had as soon as reasonably possible, within the statutory requirements, without depriving the prosecution of a reasonable time to prepare for trial."

■ In Barker v. Wingo, supra, the United States Supreme Court identified some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right to a speedy trial. They are identified as: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. See also: Wilson v. District Court of Oklahoma County, Okl.Cr., 471 P.2d 939, 942 (1970).

Considering the length of delay, the period of fifteen months seems unreasonable; and accepting defense counsel's stipulation of time slightly more than twelve months likewise appears to fall with the rule of Snow v. Turner, supra. With reference to the cause for the delays, there seems to have been several such causes shown after October 11, 1973; but no reasons are given for the twelve months questioned herein. It was during that period of time after June, 1972, that petitioner was transferred from place to place in order to testify in various other trials. The Supreme Court stated in *Barker,* supra:

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

Petitioner's court appointed attorney, Mr. Brunton, showed the letter he received from petitioner dated October 24, 1972, wherein he requested counsel to obtain an immediate new trial, and to disqualify all of the Tulsa County Judges to establish his client's desire for a speedy trial. This fact, coupled with the filing of two applications for writ of habeas corpus ad prosequendum, seems to meet petitioner's requirement for demand of trial. Petitioner also asserts that so long as he was incarcerated under a judgment and sentence from the Tulsa County District Court, the law makes the demand for a speedy trial for him. In Davidson v. State, 82 Okl.Cr. 402, 171 P.2d 640 (1946), in which the appellant was convicted for the crime of murder, this Court quoted from an earlier case, Brummitt v. Higgins, 80 Okl.Cr. 183, 157 P.2d 922 (1945), wherein this Court held:

"[I]f defendant is not on bail, the law makes the demand [for trial] for him and the prosecution has the burden of showing that the trial was delayed for some lawful cause."

The *Davidson* case, supra, was remanded back to the trial court with instructions to sustain the motion of the defendant to dismiss the prosecution for failure to give him a speedy trial as guaranteed by the Constitution and Statutes of Oklahoma.

The records before this Court do not reflect that some lawful cause has been offered by the prosecution to justify petitioner's new trial, until January 17, 1974, when the prosecutor informed the court that he was unable to locate the prosecuting witness because he had moved. No explanation is given for the alleged delay for the months prior to January, 1974, except what is reflected in the appearance docket which is admittedly inaccurate.

To what extent petitioner has been prejudiced by the delay is difficult to determine. Petitioner's court appointed counsel testified concerning the death of one possible witness; and declared his opinion to be that petitioner was prejudiced by the fifteen month delay. In Smith v. Hooey, 393

**1238**

U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1968), in his concurring opinion Mr. Justice Harlan stated:

"At trial, if petitioner makes a prima facie showing that he has in fact been prejudiced by the State's delay, I would then shift to the State the burden of proving the contrary." 393 U.S. at 284, 89 S.Ct. at 580.

Speaking to the question of prejudice the United States Supreme Court in Barker v. Wingo, supra, decision recites:

"If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." 407 U.S., at 532, 92 S.Ct., at 2193, 33 L.Ed.2d, at 118.

So far as the records before this Court are concerned, there is no showing on the part of the prosecution that petitioner's assertions are not correct, so this Court must presume from the record that petitioner has in fact been prejudiced by the delay in receiving a speedy trial on remand from this Court.

■ We are therefore left to conclude that insofar as the law makes petitioner's demand for speedy trial for him; and because the delay of fifteen monhs from the date the new trial was ordered to be had is inordinately unreasonable; and because petitioner has shown some prejudice to his defense because of the alleged delay, which has not been overcome by the prosecution; and because the prosecution has not shown legal cause for the delay; this Court is left only to conclude that petitioner's constitutional and statutory right to a speedy trial has been violated; and that the information in Tulsa County District Court Case No. CRF–70–1901, should be dismissed; and that the writ of mandamus should be granted as prayed for.

It is therefore the order of this Court that the writ of mandamus prayed for

herein shall issue; and the Tulsa County District Court is hereby ordered to dismiss that court's information in Case No. CRF–70–1901.

Writ granted.

BLISS, P. J., concurs.

BUSSEY, J., concurs in result.