Grady E. RODGERS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–29.

Court of Criminal Appeals of Oklahoma.

June 15, 1976.

Charles V. Foor, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Grady E. Rodgers, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pittsburg County, Case No. F–73–36, for the offense of Escape From State Penitentiary, in violation of 21 O.S.1971, § 443. The jury fixed his punishment at two (2) years' imprisonment, and from said judgment and sentence an appeal has been presented to this Court.

Briefly stated, at the trial the evidence presented by the State established that while serving a seven (7) year sentence for auto larceny defendant escaped from the Oklahoma State Penitentiary along with several other inmates on February 16, 1973, through a tunnel which had been dug beneath the prison wall, but defendant was apprehended that some night alongside a highway a few miles north by Oklahoma Highway Patrol troopers.

In testifying in his own behalf defendant admitted escaping incarceration through the tunnel but contended that he fled from the prison in fear of an attack upon his life by another inmate to whom he was financially indebted. Defendant explained that he had previously borrowed $500.00 from an inmate named Taylor Rolston. Since he was unable to repay the loan, defendant agreed with another inmate, who he declined to name, to dig the tunnel in exchange for money so that he could pay the debt. Defendant and other inmates then spent over thirteen months digging the tunnel and construction was completed the day prior to the escape. The following day defendant learned that he was not going to be paid for working on the tunnel, and decided to escape along with the other inmates in fear of reprisal by Taylor Rolston. Defendant testified that he had no intention of escaping prior to learning that he was not going to be paid for working on the tunnel and could not therefore repay his debt to Taylor Rolston. Defendant further contended that he was voluntarily surrendering to authorities when apprehended by the Oklahoma Highway Patrol troopers.

The only other defense witness was Jerry Ray Smith, a penitentiary inmate who shared a cell with defendant prior to the escape and who escaped through the tunnel with defendant. The testimony of this witness tended to corroborate defendant's testimony regarding defendant's motive for departing from lawful custody.

In his first assignment of error, defendant contends that the trial court erred in overruling his motion to dismiss which was predicated upon an alleged deprivation of his constitutional right to a speedy trial. The subject offense was committed on February 16, 1973, and defendant was apprehended and returned to incarceration at the prison the same night. The information was then filed on February 22, 1973, and the following day defendant had his initial appearance before the trial court. At that time, an attorney was appointed to represent defendant and preliminary examination was scheduled for March 27, 1973. Following the preliminary hearing, defendant was then arraigned on April 5, 1973. On or about July 16, 1973, the case was then set for trial, but on August 20, 1973, was stricken from the trial docket "On motion of State and due to inability to secure attendance of deft. and necessary witnesses." (O.R. 13) On January 17, 1974, the first attorney appointed to represent defendant was permitted to withdraw, and defendant's present attorney was appointed to represent him. Immediately prior to the trial on February 12, 1974, defendant's mo-

tion for dismissal was presented and heard, as follows:

"MR. FOOR: Comes now the defendant and moves the court to dismiss the Information based upon the fact the defendant has been incarcerated for one year and had not been afforded a fair and speedy trial and Information was filed February 22, 1973; defendant has been at all times incarcerated in Pittsburg County Jail available for trial; three jury terms of court have passed and the defendant has not been afforded a fair and speedy trial under the 6th and 14th amendment[s] of the Federal Constitution.

"[PROSECUTOR]: I might state, Your Honor, Mr. Foor has just been recently appointed as counsel for this defendant; he has heretofore had another attorney with him; I would point out that it was necessary to pass—its my recollection it was necessary to pass this case I believe was probably set for trial last summer in August or whenever the summer term was and had to be passed because of the situation on the riot, which would probably count for one jury term passing.

"COURT: I see no motions filed in the case requesting any trial, so therefore your Motion is overruled, exception allowed.

"MR. FOOR: Let the record show this attorney was appointed approximately two weeks ago and prior to this the defendant was represented by another attorney, which accounts for no motions being filed as far as I am concerned." (Tr. 3-4)

Despite defense counsel's foregoing assertion indicating that defendant was held upon this charge in the county jail pending trial, the record reveals that defendant was incarcerated at the Oklahoma State Penitentiary on other convictions during the pendency of this charge, except when his appearance was necessary before the trial court. Defendant received a suspended sentence of seven (7) years' imprisonment for auto larceny in Oklahoma County Case No. 33919 on February 8, 1968, and was committed to the penitentiary under that judgment and sentence on October 29, 1971, following revocation of suspension that same month. At the time of his escape defendant was under commitment of that judgment and sentence. Defendant was also convicted of attempted robbery, by force and fear, after former conviction of a felony, in Oklahoma County Case No. CRF-71-1978, and upon direct appeal to this Court his sentence was modified from twenty-two (22) years' imprisonment to fifteen (15) years' imprisonment but otherwise affirmed in *Rodgers v. State,* Okl.Cr., 510 P.2d 992 (1973).

In resolving whether an accused has been deprived of his right to a speedy trial, this Court has previously recognized and applied the functional analysis approach set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as follows:

" . . . The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

"A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors . . . Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

\* \* \* \* \* \*

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. . . ." (407 U.S. 530 and 533, 92 S. Ct. 2191, 2193, footnotes omitted)

For a more extended discussion of that decision, see *Bauhaus v. State*, Okl.Cr., 532 P.2d 434 (1975).

Delay in the present case was about one year in length. Although there was apparently more than one jury session during this period, the record reflects that the case was stricken from only one trial docket, and this occurred after about six months on motion of the State due to its inability to secure the attendance of the defendant and necessary witnesses. When the case was ultimately called for trial and defendant presented his motion to dismiss, the prosecutor attributed the underlying necessity for that continuance to a prison riot. Following that continuance, the record does not reveal any activity in the case until about five months later when the first attorney appointed to represent defendant filed an application to withdraw, which the trial court granted after taking the motion under advisement for about one week. We are informed in defendant's brief that this attorney withdrew "due to conflict with the officials of said state penitentiary pertaining to civil rights violations." (page 1) The record does not reveal whether the circumstances surrounding the withdrawal of this attorney contributed to the delay of the trial.

In discussing the length of the delay and the reason therefor, the United States Supreme Court in *Barker v. Wingo,* supra, stated in part:

"[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. . . .

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily [against the government] . . . Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." (407 U.S. 530 and 531, 92 S.Ct. 2192, footnotes omitted)

Defendant argues that except for the mere recollection of the prosecutor the record is devoid of any reason for the delay and that the State had the incumbent duty to establish good cause for the delay by competent evidence. Insofar as the only continuance of the trial is concerned, this contention fails to place appropriate emphasis upon the content of the foregoing minute order of the trial court, and defendant himself established that the prison riot occurred sometime after the escape in the cross-examination of witnesses for the State. (Tr. 28, 38 and 49) Further, since defendant's motion to dismiss was presented orally when the case was actually called for trial, the State was without notice to prepare therefor. Although following arraignment there was a delay of over three months before the case was set for trial another month hence, we are of the opinion that the prosecution of this case proceeded without undue or disproportionate delay prior to being stricken from the trial docket, and that continuance was granted for a valid reason serving to justify further appropriate delay. The record does not reveal any reason why the case was not then rescheduled for trial at an earlier date, however, there is no indication that the State deliberately delayed the trial in order to hamper the defense.

In ruling upon defendant's motion to dismiss, we agree that the trial court erred in seemingly predicating its decision exclusively upon defendant's failure to request an earlier trial. However, the significance to be attached to the defendant's assertion of his right to a speedy trial was clearly indicated in *Barker v. Wingo,* supra, as follows:

" . . . Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be af-

fected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.* (407 U.S. 531 and 532, 92 S.Ct. 2192, emphasis added)

Nevertheless, defendant cites *State ex rel. Trusty v. Graham*, Okl.Cr., 525 P.2d 1231 (1974), wherein we quoted with approval from *Brummitt v. Higgins*, 80 Okl.Cr. 183, 157 P.2d 922 (1945), as follows:

> " '[I]f defendant is not on bail, the law makes the demand [for trial] for him and the prosecution has the burden of showing that the trial was delayed for some lawful cause. . . .' " (p. 1237)

However, in the later case of *Bauhaus v. State,* supra, this Court questioned the continued efficacy of that approach and held that the rule clearly does not apply unless the pretrial incarceration of the accused is attributable to the subject charge. In so holding we reasoned as follows:

> "The United States Supreme Court in *Barker v. Wingo,* supra, rejected the demand-waiver doctrine as an unsatisfactory approach to the application of the right to speedy trial, and held that the defendant's assertion of his right is a distinct factor to be considered, with pre-trial incarceration being considered in connection with prejudice to the defendant. Among other reasons, the court recognized that the doctrine presumes the waiver of a fundamental right, is also inconsistent with the interests of society, and emphasized that the primary burden is upon the courts and

the prosecutors to bring the accused to trial. The court was of the opinion that the above approach would permit appropriate weight to be given the total circumstances of the case and adjustment for [delay] attributable to the defendant.
> . . .

> "Our approach to the application of the demand factor in *State ex rel. Trusty,* supra, therefore represented an extension of the speedy trial right as now recognized under the Sixth Amendment to the United States Constitution. We effectively eliminated a consideration of the defendant's assertion of his right where he has been held in jail pending bond, when pretrial incarceration must be considered in connection with prejudice anyway. Certainly, the corollary to the demand-waiver doctrine would no longer be permitted, i. e. that a defendant free on bond waives his right to speedy trial absent a demand therefor. However, whether we would continue such an approach we need not now decide since the reason for the rule is not present here. This is because the defendant's pretrial incarceration in Osage County occurred irrespective of the subject charge and the defendant was not in custody pending bond [on] this offense." (pp. 440 and 441)

Since pending trial on the subject charge defendant was here incarcerated in the State penitentiary as the result of other convictions, the rule urged by defendant is clearly without applicability to the present case.

Prejudice to the defendant was analyzed in *Barker v. Wingo,* supra, as follows:

> " . . . Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to lim-

it the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. . . . (407 U.S. 532, 92 S.Ct. 2193, footnote omitted)

We have previously observed that defendant's pretrial incarceration was not the result of the subject charge. However, with respect to oppressive pretrial incarceration when an accused is already incarcerated elsewhere, in *Bauhaus v. State*, supra, we quoted from *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), as follows:

"First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures [now] widely practiced, the duration of his present imprisonment may be increased and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.' " (p. 441, footnotes omitted)

Under the law of this State, defendant could not have received a sentence in the present case to run concurrent with the convictions for which he was already imprisoned in the State penitentiary. Since defendant was incarcerated at the penitentiary on only October 29, 1971, and was serving two consecutive sentences, totaling 22 years' imprisonment, the likelihood is extremely remote that the pending trial of this case interfered with any executive clemency considerations. The record does reveal that following the escape defendant was incarcerated in a cell at the penitentiary and was not permitted to be at large within the penitentiary as he was previously. However, this immediate action by the penitentiary officials was undoubtedly the direct result of defendant escaping incarceration, and defendant does not contend

that this administrative decision was attributable to the simple pendency of State criminal charges for that offense.

Defendant may have suffered some anxiety and concern as a result of the subject charge adversely affecting his chances for meaningful rehabilitation. However, since independent of this case he had only recently begun to serve a comparatively lengthy term of imprisonment, any resulting prejudice would certainly seem to be nominal.

Defendant contends that his defense was impaired by the delay of the trial since the inmate who purportedly threatened his life and caused him to flee incarceration, Taylor Rolston, and the unnamed inmate who assertedly hired defendant to dig the escape tunnel were no longer available to testify. Although the relevant dates do not appear, the record does indicate that Taylor Rolston had died while at the penitentiary prior to defendant's trial, and defendant now asserts that the unnamed inmate had been paroled. However, we note that a continuance was not sought to secure the attendance of the latter inmate, and in view of defendant's refusal to name this inmate at the trial we cannot place significant emphasis upon this party not appearing as a witness for defendant. Also, these inmates would seemingly have been entitled to invoke the constitutional privilege against self-incrimination and could not then have been compelled to testify for defendant. Even assuming that following defendant's arraignment both inmates were available at a jury session other than the one at which the trial of this case was continued for valid cause, and presented testimony consistent with that of defendant, such evidence would have been essentially cumulative to other defense testimony. Also, in testifying in his own behalf defendant admitted escaping lawful incarceration and we are persuaded that the evidence did not establish the legal defense of involuntary escape although we need not so hold in resolving this assignment of error. See, *Grubb v. State*, Okl.Cr., 533 P.2d 988

(1975), and *Stiner v. State,* Okl.Cr., 539 P.2d 750 (1975).

Since all but a very few months of the delay involved herein was justified by valid reason, and defendant did not request an earlier trial nor suffer significant prejudice, we are of the opinion that he was not denied a speedy trial and hold this proposition to be without merit.

In his final assignment of error defendant contends that the trial court erred in not following the recommendation of the jury that his sentence be suspended. The transcript upon judgment and sentencing indicates that the trial court would have followed the jury recommendation but was of the opinion that the sentence could not be suspended under 22 O.S.1971, § 991a, which prohibits the suspension of sentences for persons being sentenced upon their third or subsequent to their third conviction of a felony. At judgment and sentencing on March 15, 1974, defendant admitted prior convictions for auto larceny and attempted robbery but contended that he was eligible for a suspended sentence under the above statute since the latter case was on direct appeal to this Court and not final. However, this proposition is not factually supportable. Defendant's conviction for attempted robbery by force or fear, after former conviction of a felony, was affirmed by the decision of this Court rendered in *Rodgers v. State,* supra, on May 24, 1973, and upon which mandate issued June 11, 1973. That conviction was therefore final even before defendant's trial in the instant case, and in any event, defendant admitted yet another conviction for concealing stolen property at the trial of this case. (Tr. 77) This assignment of error is therefore dismissed.

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BRETT, P. J., concurs in results.

BLISS, J., concurs.